Pages 1 - 49

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
  VS.                          )      NO. CR 17-0533 EMC
                               )
JONATHAN NELSON, et al.,       )
                               )
          Defendants.          )
_____)
                          San Francisco, California
                          Friday, May 1, 2020

**TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

**APPEARANCES:** (via Zoom)

For Plaintiff:
                    DAVID LLOYD ANDERSON
                    United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California  94102
              BY:   **KEVIN J. BARRY**
                    **AJAY KRISHNAMURTHY**
                    **ASSISTANT UNITED STATES ATTORNEYS**


For Defendant Jonathan Joseph Nelson:
                    RICHARD G. NOVAK, A PROFESSIONAL LAW
                    CORPORATION
                    65 North Raymond Avenue - Suite 320
                    Pasadena, California  91103
              BY:   **RICHARD G. NOVAK, ATTORNEY AT LAW**


                    819 Eddy Street
                    San Francisco, California  94610
              BY:   **JAI M. GOHEL, ATTORNEY AT LAW**


        (APPEARANCES CONTINUED ON THE FOLLOWING PAGE)

Reported By:  Marla F. Knox, RPR, CRR, RMR
              United States Official Court Reporter

```
 1   APPEARANCES: (CONTINUED)

 2   For Defendant Damien David Cesena:
                         DUNGRIE TANGRI LLP
 3                       217 Leidesdorff Street
                         San Francisco, California  94111
 4                 BY:   GALIA AMRAM, ATTORNEY AT LAW
                         WHITNEY R. O'BYRNE, ATTORNEY AT LAW
 5
     For Defendant Brian Allen Burke:
 6                       LAW OFFICES OF ERIK G. BABCOCK
                         717 Washington Street - 2nd Floor
 7                       Oakland, California  94607
                   BY:   ERIK G. BABCOCK, ATTORNEY AT LAW
 8
     For Defendant David Salvatore Diaz:
 9                       LAW OFFICES OF JAMES S. THOMSON
                         732 Addison Street - Suite A
10                       Berkeley, California  94710
                   BY:   JAMES S. THOMSON, ATTORNEY AT LAW
11
     For Defendant Russell Allen Lyles, Jr.:
12                       LAW OFFICES OF MICHAEL CLOUGH
                         6114 LaSalle Avenue - Suite 833
13                       Oakland, California  94611
                   BY:   MICHAEL W. CLOUGH, ATTORNEY AT LAW
14
     For Defendant Jeremy Daniel Greer:
15                       LAW OFFICES OF RANDY SUE POLLOCK
                         120 Montgomery Street - Suite 1800
16                       San Francisco, California  94104
                   BY:   RANDY SUE POLLOCK, ATTORNEY AT LAW
17
     For Defendant Brian Wayne Wendt:
18                       LAW OFFICES OF MARTIN A. SABELLI
                         740 Noe Street
19                       San Francisco, California  94114
                   BY:   MARTIN A. SABELLI, ATTORNEY AT LAW
20
                         LAW OFFICES OF J.T. PHILIPSBORN
21                       507 Polk Street - Suite 350
                         San Francisco, California  94102
22                 BY:   JOHN T. PHILIPSBORN, ATTORNEY AT LAW

23

24           (APPEARANCES CONTINUED ON THE FOLLOWING PAGE)

25
```

 1  **APPEARANCES:** (CONTINUED)

 2  For Defendant Russell Taylor Ott:
                         LAW OFFICE OF ROBERT FREDERICK WAGGENER
 3                       214 Duboce Avenue
                         San Francisco, California  94103
 4              BY:  **ROBERT F. WAGGENER, ATTORNEY AT LAW**

 5                       11400 W. Olympic Blvd.- Suite 1500
                         Los Angeles, California  90064
 6              BY:  **MARCIA A. MORRISSEY, ATTORNEY AT LAW**

 7  For Defendant Christopher Ranieri:
                         LAW OFFICES OF JOHN G. WALSH
 8                       63 Atlantic Avenue - 3rd Floor
                         Boston, Massachusetts 02110
 9              BY:  **JOHN G. WALSH, ATTORNEY AT LAW**

10  For Defendant Merl Frederick Hefferman:
                         LAW OFFICES OF JAMES BUSTAMANTE
11                       1000 Brannan Street - Suite 488
                         San Francisco, California  94103
12              BY:  **JAMES BUSTAMANTE, ATTORNEY AT LAW**

13  For Defendant Raymond Michael Foakes:
                         LAW OFFICES OF GEORGE CLAUDE BOISSEAU
14                       740 4th Street - Second Floor
                         Santa Rosa, California  95404
15              BY:  **GEORGE C. BOISSEAU, ATTORNEY AT LAW**

16

17

18

19

20

21

22

23

24

25

**Friday - May 1, 2020**                                          **1:31 p.m.**

**P R O C E E D I N G S**

**---oOo---**

**THE CLERK:**  Calling criminal action 17-533, United States of America versus Jonathan Joseph Nelson, Raymond Michael Foakes, Russell Allen Lyles, Jeremy Daniel Greer, Brian Wayne Wendt, Russell Taylor Ott, Christopher Ranieri, Damien Cesena, Brian Allen Burke, David Salvatore Diaz and Merle Frederick Hefferman.

   Counsel, please state your appearances for the record beginning with Government's Counsel.

**MR. BARRY:**  Good afternoon, Your Honor, Kevin Barry and Ajay Krishnamurthy for the United States.

**THE COURT:**  All right.  Good afternoon, Mr. Barry.

**MR. BUSTAMANTE:**  Good afternoon, Your Honor, James Bustamante appearing on behalf of Mr. Hefferman.

**THE COURT:**  All right.  Good afternoon, Mr. Bustamante.

**MR. BOISSEAU:**  Good afternoon, Your Honor, George Boisseau on behalf of Mr. Foakes.

**THE COURT:**  All right.  Thank you.

**MR. CLOUGH:**  Good afternoon, Your Honor, Michael Clough appearing on behalf of Mr. Lyles.

**THE COURT:**  All right.  Great.  Thank you.

            (Unidentified person speaking.)

1     **MR. NOVAK:**  Richard Novak for John Nelson.

2     **THE COURT:**  Wait.  Who is that speaking?

3     **MR. NOVAK:**  That was Richard Novak for John Nelson.

4     **THE COURT:**  Someone else is speaking.

5     **MR. GOHEL:**  This is Jai Gohel for John Nelson.

6     **THE COURT:**  Angie, is there somebody else --

7     **THE CLERK:**  I'm trying to locate.  Who is speaking

8     right now, please?  Who was speaking?

9                         (No response.)

10    **MR. NOVAK:**  Richard Novak made his appearance for the

11    John Nelson.

12    **MR. GOHEL:**  Jai Gohel for John Nelson also appearing.

13    **MS. AMRAM:**  Galia Amram and Whitney O'Byrne for Damien

14    Cesena.

15    **THE COURT:**  Thank you.

16    **MR. WAGGENER:**  Robert Waggener and Marcia Morrissey

17    are appearing for Russell Ott.

18    **THE COURT:**  All right.  Thank you, Mr. Waggener.

19    **MR. THOMSON:**  James Thomson appearing for David Diaz,

20    who I believe is also present by telephone, Your Honor.

21    **THE COURT:**  All right.  Thank you.

22    **MR. BABCOCK:**  Erik Babcock on behalf of Brian Burke

23    whose appearance is waived.

24    **THE COURT:**  Okay.

25    **MR. WALSH:**  Good afternoon, Your Honor, John Walsh on

1  behalf of Christopher Ranieri whose presence has been waived as

2  well.

3          THE COURT:  All right.  Anybody else?

4          MR. SABELLI:  Good afternoon, Your Honor, Martin

5  Sabelli for Brian Wendt who is in custody.

6          THE COURT:  All right.

7          MR. PHILIPSBORN:  Good afternoon, Your Honor, John

8  Philipsborn who is co-Counsel for Mr. Wendt.

9          THE COURT:  All right.  Thank you, Mr. Philipsborn.

10  Any other appearances by Counsel?

11                          (No response.)

12          THE CLERK:  Who is representing Jeremy Greer?

13          THE COURT:  Ms. Pollack normally.

14          MR. SABELLI:  It is.  I can appear for her and I will

15  text her right now as well.

16          THE CLERK:  Thank you.

17          THE COURT:  All right.  Does that cover Counsel for

18  each of the Defendants?

19          THE CLERK:  Yes, Your Honor.

20          THE COURT:  All right.  And I can see in terms of the

21  attendees that Mr. Burke, Mr. Krishnamurthy -- oh, Ms. Pollack

22  is as an attendee.  We need to --

23          THE CLERK:  Here we go.  All right.  She is now a

24  panelist.

25          THE COURT:  All right.  Can you hear us, Ms. Pollack?

1        **THE CLERK:**  Ms. Pollack?

2        **MS. POLLACK:**  Yes.

3        **THE COURT:**  Great.

4        **MS. POLLACK:**  You can hear me.

5        **THE CLERK:**  Yes.

6        **THE COURT:**  All right.  The record will reflect that

7    Mr. Lyles and Mr. Ott are also in attendance through the

8    attendee list.

9        Is there any other Defendant that we know of that is

10   attending by teleconference here?

11       **THE CLERK:**  Your Honor, I see Mr. Burke and

12   Mr. Cesena.

13       **THE COURT:**  Right.  I mentioned those two.  Anybody

14   else?

15                        (No response.)

16       **MR. THOMSON:**  Your Honor, this is James Thomson.  I

17   think Mr. Diaz is appearing by telephone as well.

18       **THE COURT:**  Okay.

19       **MR. BUSTAMANTE:**  Your Honor, I believe that

20   Mr. Hefferman is attending by telephone as well.

21       **THE COURT:**  All right.  With respect to the others,

22   their appearances are waived, correct, Counsel?

23       **MR. NOVAK:**  That's correct as to Mr. Nelson.

24       **MR. WALSH:**  Correct as to Mr. Ranieri, Your Honor.

25       **MR. CLOUGH:**  Your Honor, I think Mr. Lyles is on.

1          **THE COURT:**  All right.  Yes, Mr. Lyles is on.

2          **MR. CLOUGH:**  Thank you.

3          **THE COURT:**  Correct as to Mr. Foakes.

4          **MS. POLLACK:**  Your Honor, I believe, Jeremy Greer is

5    on the line.

6          **THE COURT:**  Okay.

7          **MR. SABELLI:**  Yes, Your Honor, with respect to

8    Mr. Wendt.  I should note -- although it is not an issue for

9    today -- I don't think there is a mechanism so far for the

10   in-custody clients in Santa Rita to participate in these

11   hearings, but we do agree to waiving his presence for today.

12         **THE COURT:**  All right.  There may be a way.  I mean,

13   we are -- we are having sentencings, pleas, by telephonic and

14   video -- video is limited to Saturday mornings and Sunday

15   mornings.  Audio is available two afternoons a week, but they

16   are limited in terms of time slots but -- and I don't know how

17   many can participate.  That's another question.

18       I think telephonically we might be able to have two,

19   possibly three, I'm not sure; but if they want to -- if those

20   who are detained want to participate at least telephonically,

21   let us know and we can try to arrange that with Santa Rita in

22   advance.

23         **MR. SABELLI:**  Thank you, Your Honor.

24         **THE COURT:**  Okay.  All right.  Is there anybody else

25   whose appearances we have not dealt with this morning in terms

1   of the Defendants?

2                       (No response.)

3         **THE COURT:**  Let me reiterate that under our General

4   Order 74 that hearings at this point cannot be conducted in

5   person without seriously jeopardizing the public health and

6   safety.  And that in recognition of that as well as the need to

7   go forward with the status conferences to get this case

8   continued to progress, that's why we are holding this and not

9   waiting for the date when we can have physical appearances in

10  the courthouse.

11        So let's talk about where we are.  I know that there has

12  been a lot of meetings, a flurry of filings.  And it appears --

13  and, plus, we have also tried to set up a -- kind of a

14  break-room.  So if we need to go into sealed proceedings, we

15  can go to a different meeting.  I'm not sure how well that is

16  going to work.

17        If we have to, we will have to have Angie start up another

18  meeting that is not a webinar and, therefore, not attended by

19  the public.  There won't be any attendees.  That is a private

20  setting which replicates the court under seal.

21        So at any point if any of you think we should discuss a

22  matter not with the public in attendance, let me know.  And

23  then we will try to make that arrangement.  We did try to set

24  up a side meeting and I'm showing it.  I'm not sure whether it

25  is easy to get there; but we will find out, I guess.

1      So I have the Government's -- or the joint status report

2  that now lays out kind of a different timeline.  And maybe I

3  want to let -- I don't know if it's you, Mr. Sabelli or

4  Mr. Philipsborn, who filed this explain sort of where we are at

5  in your view.

6          **MR. SABELLI:**  Thank you very much, Your Honor.

7      This is the conclusion of a meet-and-confer -- several

8  meet-and-confers between a committee of the Defense and

9  Government Counsel.  And it lays out the substance of our

10 communications and a joint recommendation about continuing the

11 discussions of the trial groupings issue until mid-June and

12 with that, the trial date issue.

13     That would allow us to also meet and confer further about

14 a pretrial litigation schedule.  We have asked to be able to

15 have until mid-May to try to propose a joint pretrial

16 litigation schedule to the Court.

17     That leaves pending the issue of the virtual examination

18 of the Daubert -- rather, the virtual Daubert hearing.

19     And as noted in a separate filing that I made today,

20 Mr. Philipsborn and I have concerns with respect to the NOI

21 issue, the Notice Of Intent issue.

22     And I also filed a separate document regarding our

23 concerns about the 404(b) evidence that was noticed last week

24 by the Government -- or the earlier this week by the Government

25 pursuant to the court order.

1        So the timeline that we suggested in this filing, Docket

2   1042, is we come back in mid-June.  There has been some

3   discussion about what dates are available, and that's -- that's

4   another issue; but in terms of what we suggested in the

5   document, the joint status conference, we asked to come back in

6   mid-June to discuss trial groupings.

7        That will give the parties a chance to not only evaluate

8   the evidence and the notice that we received this week but for

9   the Government to complete the process of identifying

10  statements and to turn those statements over to the Defense.

11       The Government anticipates that that will take about five

12  weeks.  We wanted two weeks to review those statements.  Hence,

13  the seven-week timeline, which takes us to about June 19th.

14       There are availability issues for the Court and for

15  Counsel, but somewhere in mid to late June is what we were

16  aiming at in the document.

17       And then coming back in about ten days after meet and

18  conferring with the pretrial schedule -- about a pretrial

19  litigation schedule, that is something that we might be able to

20  do without a court appearance; but that is not something that

21  that was discussed with the Government, whether or not we would

22  need a court appearance for that.  So that's where we are at,

23  Your Honor.

24       **THE COURT:**  Now, the pretrial schedule that is

25  something in terms of laying out what we talked about before,

1    the different waives of Daubert hearings and other motion work?

2         **MR. SABELLI:**  Yes, Your Honor.  At the end of the last

3    hearing when we were discussing what we should do at the

4    meet-and-confer, the Court said:  Why don't you meet and confer

5    about motions to suppress and other motions.

6         And so we have attempted to do that, but in light of

7    the -- of the disclosures and the progress of the

8    meet-and-confer, we all felt that we needed more time to do

9    that.  And so that's why we asked for additional time for that.

10        **THE COURT:**  Now, is that pretrial litigation schedule

11   something that can be suggested independent of the actual trial

12   date because when you are talking about sort of later May to

13   come up with that, but we are not meeting until presumably

14   mid-June to talk about trial dates and groupings; that still

15   can go forward in your view?

16        **MR. SABELLI:**  Well, Your Honor, we didn't discuss that

17   explicitly, and there may be different positions on that.

18        Certainly coming up with a pretrial litigation schedule

19   completely without a sense of trial dates has some inherent

20   problems in it.

21        So we can -- there may be certain litigation that we can

22   schedule and certain litigation that we can't schedule without

23   a trial date.  That's why we asked for more time so that we

24   could sit down and try to work some of those things out.  Keep

25   the case moving.  Schedule motions that can be scheduled.  And

 1   the ones that can't be scheduled without a trial date, we won't

 2   be able to do.

 3        **THE COURT:**  All right.  Well, I think it does make

 4   sense at the very least to have a sequence of what -- we can

 5   all agree on a sequence of motions and sequence of things that

 6   have to happen, and we can adjust the spacing depend on what

 7   the trial date is.

 8        I do think it makes sense to try to at least lay out a

 9   structure with some suggested dates where you can.  So I would

10   endorse that.

11        **MR. SABELLI:**  Yes, Your Honor.  And I'm not speaking

12   for anybody else now except for Mr. Philipsborn or I.  But we

13   filed the 404(b) statement because we anticipate bringing

14   litigation regarding 404(b) in the near future, and that would

15   be independent of a trial date.

16        So there may be some motions of that that can be brought

17   without having a trial date that we can work out a schedule for

18   in short order.

19        **THE COURT:**  All right.  Anybody else have any thoughts

20   on that question?

21        **MR. WAGGENER:**  Robert Waggener speaking for Mr. Ott.

22   On the 404(b) issue I think that is an issue which is -- goes

23   beyond Mr. Wendt.  So I think that the Ott team -- and I

24   suspect a number of other lawyers will also have some positions

25   to take regarding the 404(b) evidence as being offered by the

1   government.

2          **MR. WALSH:**  Your Honor, John Walsh on behalf of

3   Christopher Ranieri.  I join in with Mr. Waggener's remarks as

4   well as Mr. Sabelli's on the 404(b) evidence.

5          **MR. NOVAK:**  Your Honor, Richard Novak for Mr. Nelson.

6   I think for obvious reasons we will be addressing the same

7   issues in some pretrial motion in the very near future.

8          **MR. GOHEL:**  Your Honor, this is Jai Gohel for John

9   Nelson.  I think the issue is that the 404(b) evidence, without

10  going into specifics, could have a significant impact, rulings

11  on that, with respect to -- at least our position is it could

12  affect the trial groupings.

13         **MR. CLOUGH:**  Your Honor, Michael Clough on behalf of

14  Mr. Lyles.  There are some unique issues relating to

15  Mr. Lyles -- I think the Court has some knowledge of that we

16  can't talk about in an open session -- but I will be meeting

17  and conferring with Mr. Barry and try to figure out how to

18  merge the motions I anticipate filing with the rest of the

19  schedule.

20         **THE COURT:**  All right.  Well, I don't know if we have

21  to --

22         **MR. THOMSON:**  Your Honor, this is James Thomson.  I

23  don't know if you want every one of us to kind of join in with

24  what Mr. Waggener started, but we are all on 404 I think.

25         **THE COURT:**  I understand that.  So this is just an

1   illustration of the kind of matters that we want to try to

2   schedule in sequence at least.

3        So regardless of the trial date, that we can move forward.

4   Whether it is a 404(b) motion, motion to suppress, Daubert

5   hearings, whatever it is, I do want to keep moving and

6   irrespective of whether we have -- what the trial date is going

7   to be and what the trial grouping is.

8        I would like the parties to meet and confer and -- by,

9   let's say, mid-May.  See if you can come up with a proposed

10  schedule.

11           MR. SABELLI:  Yes, Your Honor.

12           THE COURT:  That gets us through the next several

13  months.  I think that makes a lot of sense.

14           MR. THOMSON:  Yes, Your Honor.

15           THE COURT:  Everyone agrees with that; that we need to

16  do something like that?

17           MR. WALSH:  Yes, Your Honor.

18           MR. SABELLI:  Yes, Your Honor.

19           MR. BOISSEAU:  Yes, Your Honor.

20           MR. THOMSON:  Yes, Your Honor.

21           THE COURT:  That leaves a question about the

22  Daubert -- at least the first waive, the enterprise Daubert

23  hearing.  The statement I received suggests that we could

24  discuss this issue about whether we can have a virtual hearing

25  and whether attendance is required or not.

 1          There is a suggestion here that it might be prudent to
 2     postpone that in light of General Order 72 and the whole
 3     question of trial groupings.  I would like to hear your
 4     thoughts about whether we should try to address that now or
 5     defer and see where it takes us.

 6          I mean, it is true that the General Order has now put us
 7     through June 1st, this court.  We don't know what is going to
 8     happen after that, but there is a possibility that things will
 9     begin to open up and certain proceedings -- particularly in the
10     criminal arena -- may recommence; but I don't know that.  I
11     don't know if anybody knows that at this point.  But I would
12     like to hear your thoughts about timing with respect to the
13     handling of the Daubert hearing.

14          **MR. THOMSON:**  Your Honor, this is James Thomson on
15     behalf of Mr. Diaz, who was joined by Mr. Hefferman and Mr.
16     Ott, with respect to our position and our suggestion that it
17     might be prudent to wait and address this matter at the next
18     calling of the case only because of the fact of the extension
19     of the general order and also the fact that there is at this
20     point in time no available mechanism for the video type hearing
21     that we were talking about.

22          If there is no availability for that, then that's kind of
23     going to moot the issue.  I don't know whether the Court wants
24     to make a ruling on an issue that may not come to light which
25     is the right to be present or not if there is no way to

1    actually be present.

2        So -- we just thought, the three of us at least -- thought

3    that it would be better -- or it might be better -- I mean, it

4    is the Court's call obviously -- but it might be better to wait

5    until the next calling of the case to address this issue.  Or

6    if something were to happen in the interim, we could notify the

7    Court, either in a status report or in some sort of pleading,

8    about some change that would cause us to suggest that the Court

9    should make a ruling earlier.

10       **THE COURT:**  All right.  What about for Mr. Wendt?  I

11   mean, since it sounds kind of like a moving force for getting

12   this going.  What is your view at this point about timing?

13       **MR. SABELLI:**  Your Honor, we have not been able to

14   identify a mechanism for holding the hearing.  We have

15   attempted -- Mr. Philipsborn and I have attempted to research

16   the issue.  We would like to keep the case moving.  We believe

17   that this issue in particular, given the scope of the

18   Government's proffer, is of fundamental importance and needs to

19   be defined sooner rather than later.

20       As of now we have not identified an adequate mechanism for

21   getting this done.  So we will continue to look for that

22   mechanism.

23       We believe, as do all the Defendants, that -- I'm sorry --

24   all Counsel that the Defendants need to be effectively present

25   at a hearing.  We differ about what "effective presence" means.

1      We have suggested the conditions that are necessary for

2  that, but we just haven't found a way to make that real yet.

3  So we will continue to look for that.  We can alert the Court,

4  as Mr. Thomson said.  But so far, we have not been able to

5  identify a way to have this done in the short-term.

6      **THE COURT:**  Well, when you say there is not a

7  mechanism, it sort of begs the question in terms of what is

8  required either under Rule 43 or by constitution.

9      And if I were to determine that a physical presence is not

10 required but that, for instance, your -- out of your five

11 conditions, the first four can be met, I think there is a way.

12     So it sort of begs the question -- depends on what it is

13 that is constitutionally adequate and do we have what is

14 necessary to make that happen.  We can certainly have witnesses

15 examined.  We can have documents looked at through this

16 mechanism, for instance -- through Zoom and there are some

17 other ones as well.

18     And, in fact, I'm prepared and we are going forward with a

19 bench trial in a fairly complicated civil case involving about

20 ten experts.  We are scheduled to do that on June 8th all by

21 Zoom, but you know how that goes.

22     It is the presence of the Defendants that gets tricky.

23 Particularly those -- those who are not detained, they can

24 participate as some of them are now.  Those who are detained,

25 it gets a little trickier.  There is a way to video conference

 1    in, but very hard to get blocks of time -- like six hours block

 2    of time.  That may be possible.  I don't know.

 3         So that -- the question is:  Should we confront the issue

 4    now and be prepared to go forward one way or another or should

 5    we wait, for instance, until June when our general order, at

 6    least the current one, expires and we will see where we are at.

 7    And maybe we will have live hearings at that point.

 8         And part of the timing question -- because what was

 9    driving an expedited Daubert hearing was a need to get that

10    resolved as the front load of the other Daubert issues in order

11    to prepare for a December 2020 trial date.

12         So we have got a lot of things kind of plugging in pieces

13    of the puzzle here.  So that's why I wanted to get particularly

14    Mr. Wendt's view since he really wanted to move forward at

15    least initially with the -- with an early trial date.

16         **MR. SABELLI:**  Yes, Your Honor.

17         I do want to say one thing in reaction to the Court's

18    comments.  I would lean very heavily in terms of our conditions

19    on the ability to consult with Counsel regarding the direct

20    examination and with other co-Counsel and all the accused being

21    able to speak to their Counsel.

22         Not only is it necessary for the accused to listen and see

23    the witness, but we also have to meet with them and go over the

24    transcript and the video.  So that's part of the process that

25    we have not been able to resolve.

 1          And as I understand it, the Government doesn't have a

 2     suggestion about how we can do that.  There is very limited

 3     availability in terms of conferencing with the in-custody

 4     clients.

 5          So if I heard the Court correctly, it is going to dip its

 6     toe in the water at the beginning of June with the complex

 7     civil trial in an expert-heavy environment.

 8          And if that's the case, the Court may develop experience

 9     in the beginning of June that would be relevant to this

10     inquiry.  We have not found a way to meet our conditions, and

11     we believe those are the conditions for effective presence.

12          And I want to underscore the importance of this particular

13     hearing and the importance of consulting with our clients given

14     the nature of the expertise here.  We are not talking about a

15     DNA expert or something like that with a non-DNA expert client

16     who can't add much to it.

17          This is a situation where the Government's allegations

18     alone suggest that the Defendants can effectively participate

19     in the preparation for the cross-examination.

20          **THE COURT:**  Let me ask you one of your conditions -- I

21     understood the idea of having direct testimony pausing if your

22     client can and then going over that to find out, you know, talk

23     about -- you know, the results of that direct and what is

24     faulty, et cetera, et cetera; and then prepare for the cross.

25          But you say you want an opportunity to present the video.

1    And that's where one, I have -- I have a question.  Well, what

2    does that add?  What does a client bring -- I understand the

3    client may bring some substantive comments about the

4    inaccuracies, for instance, of some of the opinions and

5    observations of one or both of the experts; but to review the

6    video in addition to the transcript, I'm not sure I get that.

7              MR. SABELLI:  Your Honor, I think it is much easier to

8    digest and understand testimony and the emphasis of testimony

9    with a video presentation.

10             I understand, of course, that a transcript and a

11   sufficient opportunity to review the transcript and discuss it

12   with Counsel -- not just review it but actually work through it

13   with Counsel the way we would, you know, pre-COVID days, that

14   is essential.

15             It is not just the client reading it.  It is being able to

16   talk to the client about it and work through what we are going

17   to do on cross.  That is essential.

18             The Court may find that the video is unnecessary if there

19   is a transcript, and we have sufficient time to review that

20   transcript with the client.  That is one possible outcome of

21   the Court's analysis.

22             THE COURT:  And is there an impediment if you had the

23   transcript in hand -- I know access is difficult especially

24   with the COVID situation.  Is there a problem getting access to

25   the client, enough time to -- I don't know how many hours you

1    need.  But are they allowing meetings at Santa Rita that can --

2         **MR. SABELLI:**  We have meetings and Mr. Philipsborn and

3    I have jumped on every opportunity.  We get an hour a week.

4         **THE COURT:**  They only allow one hour a week?

5         **MR. SABELLI:**  I have not made an inquiry as to whether

6    or not we could have a six-hour block or -- you know, putting

7    aside the effectiveness of the six-hour jail meeting, which is

8    something that psychologists would laugh at, I think; but my

9    understanding is we do not have anything like that kind of

10   access.  We get a slot on a weekend.  It is a Saturday or a

11   Sunday.

12        **THE COURT:**  Okay.

13        **MR. SABELLI:**  For now.

14        **THE COURT:**  All right.  And but you could get the

15   transcript to Mr. Wendt; right?  I mean he can -- trial

16   transcript -- hearing transcript?

17        **MR. SABELLI:**  I believe we could, yes.

18        **THE COURT:**  Let me ask another question.  I don't want

19   to get too deep into the merits yet of the ultimate question

20   about the constitutionality of the -- of a bifurcated or

21   trifurcated semi-virtual Daubert hearing.

22        But one thought occurred to me.  One thing we are doing in

23   the civil case is the parties have stipulated to have the

24   direct testimony made not on the stand but by way of an

25   affidavit, which actually is quite common in many areas where

1   you would have the full testimony but in affidavit form.

2       And it occurred to me that that might be an efficient way

3   to proceed.  I would like the Government's reaction to that.

4   Rather than -- you know, this is not a jury trial.  We don't

5   need the drama of putting somebody on the stand and having them

6   testify on direct especially if it is an expert.  And given the

7   disclosures that have already been made, I mean, what about

8   having that direct testimony in the form of an affidavit so we

9   don't have to have a trial and stop?

10      We could simply then present that affidavit, and then we

11  would have an evidentiary hearing for cross and then redirect

12  and recross?

13      **MR. BARRY:**  Your Honor, this is Kevin Barry for the

14  Government.

15      So there is a problem with the way the Defense is sort of

16  pitching this in that this is not -- you know, the idea of

17  having expert evidence through affidavits and having a battle

18  of the experts is a trial issue.

19      One of the reasons that the Defendants' presence isn't

20  necessary for the Daubert hearing is because it doesn't matter

21  whether the opinions proposed by the experts are accurate for

22  the purposes of Daubert.

23      If the Defendants can say to their client -- to their

24  lawyers that what the -- what the expert is saying about the

25  Hells Angels is dead wrong.  That is not what the Hells Angels

1    do.   Nobody was at that run or that run didn't take place or

2    that is not the structure.   That is not the way things go.

3    That does not matter at a Daubert hearing.   The only issue for

4    the Daubert hearing is the bases for those opinions.

5         An example of a DNA expert would be the DNA expert could

6    have tested the swab from the gun and concluded and developed a

7    match, you know, developed a genetic profile.   That conclusion

8    can be completely wrong, and the Defense experts would say

9    that.   No.   What you did was you didn't do the extraction

10   correctly.   But that's not a challenge at a Daubert hearing.

11        The only DNA -- the only challenge for DNA for a Daubert

12   hearing is if there was some novel means of say using a complex

13   mixture.

14        So the Defense -- the Government expert can be 100 percent

15   wrong on the facts with respect to the opinions, but that is

16   not what the Court is doing at the Daubert hearing.

17        All that -- all that happens at the Daubert hearing for an

18   enterprise expert is what is your basis for opinions.   And we

19   submit that the Defense has that bases.

20        The Court has enough information to say that this expert

21   is not simply a highway patrol officer who stopped the Hells

22   Angels three times and is going to offer an opinion about all

23   these things.

24        That is the -- that is sort of the key for the enterprise

25   Daubert.   It is does this person know enough about the

1    enterprise and how do they know that.  And so, again, it

2    doesn't matter whether what they say about the enterprise is

3    right or wrong.

4        So the idea of having -- you know, the Defense has

5    basically the expert testimony in the form of the lengthiest

6    enterprise disclosure I think anyone can ever point to.

7        So the key question is going to be, you know, what

8    cross-examination is there.  You know, the direct is probably

9    going to just be, you know, regurgitation of the person's

10   qualifications and all the things that they have done.

11       And it is also possible in the context of Daubert for the

12   Court to say:  I have heard enough.  I don't need any

13   cross-examination.  I believe that this expert either doesn't

14   have enough or has enough without the need for any Defense

15   cross-examination at all.

16       So my -- the issue that the government takes with the --

17   sort of the procedures that have been proposed especially with

18   this -- you know, the Defense need to have their clients right

19   there and maybe the bifurcated procedure, it is not necessary

20   for this.

21       As a practical matter, we are -- the Government is fine

22   with waiting because, you know, even if there is a Daubert

23   hearing and a conclusion in October with a December 2020 trial

24   date -- assuming that date sticks -- even if there is a

25   decision in October, that won't compromise anyone either way.

1        The Government, you know, is preparing either way.  If the

2    Defense gets a -- you know, an order saying that it is

3    admissible, then there is no surprise because they know very

4    well exactly what is the timeline.

5            **MR. SABELLI:**  Your Honor, what Government Counsel is

6    not focusing on is the lack of reliability issue and the other

7    bases for exclusion.  So it is possible, for example -- just to

8    give a very concrete example -- that their expert were to say:

9    I came to X conclusion based upon the statements of informants

10   1, 2 and 3.

11       And our clients could give us information, once that is

12   revealed, that would allow us to attack the reliability of the

13   opinion based -- that is being proffered.

14       There are also other bases for excluding expert --

15   quote-unquote, enterprise expert opinions that our clients

16   could, just based upon the allegations that the Government

17   makes against our clients, be able to assist us in preparing.

18           **THE COURT:**  Let me ask you for a second.  Let's take

19   your example.  An opinion based on informants 1, 2 and 3

20   reaching X conclusion.  Your client gives you information that,

21   no, the informants 1, 2 and 3, you know, didn't say that or

22   they don't exist or they got the wrong persons.

23       So then you have competing testimony.  You have the expert

24   saying:  Yes, I did talk to informants 1, 2 and 3.  This is

25   what they told me.

 1       And then you have a cross that says:  No -- that suggests

 2  you -- no, you didn't have -- you didn't hear that or you

 3  didn't have 1, 2 or 3.  Isn't that an issue for trial?

 4       I mean, am I supposed to make a credibility determination

 5  at that point?  It seems like the question is:  Is the asserted

 6  basis one that is -- one upon which experts can rely and is

 7  reliable.  It's not clear to me at this point that I'm supposed

 8  to determine a credibility issue at this point when an expert

 9  says:  I talked to Y or Z.

10       **MR. SABELLI:**  Your Honor, first, I want to remind the

11  Court that the Government itself in filing -- in a filing

12  suggested to the Court that it needed to supplement its own

13  reliability showing through the direct examination.  So the

14  Government has taken that position that it has not sufficiently

15  established the reliability of its experts.

16       But putting that aside, number one, I do agree that the

17  Court should make a credibility determination; but that's not

18  really what I was driving at.  What I was driving at is

19  something different.  The expert -- because of something that

20  our client helps us with, we are able to show that a basis of

21  an opinion is not a reliable basis.

22       For example, our client tells us this guy was never a

23  member of the club or this person has a felony conviction for

24  perjury or this person was out of the country then.  And then

25  we are able to confront their expert based upon what our client

1    tells us with information that the expert can't -- isn't going

2    to refute.   It is simply information that the Government expert

3    didn't have -- did not factor into their decision.   And,

4    therefore, we would be able to show the Court that the opinion

5    that came out of that was not reliable.

6            **THE COURT:**  All right.  I understand.  If there is --

7    there is evidence that suggests that one of the bases

8    indisputably is not reliable, I can understand that.   My

9    question is:  What if there is a contest?

10       The expert says:  Yes, this person told me they were in

11   the -- in Hells Angels this particular year and this chapter.

12   And you on cross suggest the contrary.   It seems to me that is

13   the classic kind of issue that is for trial.

14       I'm not sure that -- I have never had a Daubert hearing

15   where I'm supposed to test the credibility of -- this is a

16   gatekeeping question.   It is not trial.   I'm not here to

17   determine whether or not it is a convincing expert or not.

18           **MR. SABELLI:**  Your Honor, sure.   It is a gatekeeping

19   function.   So it is incumbent upon the Court to be able to

20   determine whether these opinions -- which, by the way, are

21   extremely broad and extremely prejudicial and go to the nature

22   of the enterprise and the existence of the enterprise --

23   whether or not they are reliable.

24       And, furthermore, particularly with respect to the

25   death-eligible people, there is a heightened element --

1    heightened scrutiny that is necessary here because this

2    information is going to go to a jury that could potentially

3    have a -- have the decision about death.

4         **THE COURT:**  Well, I certainly appreciate that.  I will

5    say that the cases and the section that you cite are in

6    opposite because those go to sentencing, not guilt phase.  But,

7    you know, I certainly appreciate that.  When the gravity of

8    these proceedings has such a consequence, of course, that's why

9    we are trying to be as careful as we can.  Well --

10        **MR. BARRY:**  Your Honor --

11        **THE COURT:**  Well, let me go back to my first point.

12   That is:  If what you say is true, Mr. Barry, essentially you

13   are going to regurgitate what is already in the affidavit or at

14   least in your proffer.

15        And I will say I think part of the problem with the

16   proffer -- and one of the reasons why I decided to have an

17   evidentiary hearing -- was that there were certain opinions

18   that were -- many opinions were, the bases for which, were

19   cited in a footnote and explained and cited; but there are some

20   that weren't.

21        So I want to give the Government a chance to make sure

22   that they make clear what the bases of each opinion is, which

23   is necessary under Daubert.  Because if there is no bases, that

24   clear opinion can't stand.  That's why I was going to have an

25   evidentiary hearing.  But it occurred to me, that can be done

1    by affidavit.

2        Maybe it is a little more robust than what you have done,

3    but in some ways at least it moves the ball forward.   The

4    Defendants will see what that testimony is.   We don't have

5    to -- you know, I mean, and then they can conduct their cross

6    accordingly.

7            **MR. BARRY:**   Your Honor, I appreciate that; but let me

8    make an additional point.

9        I would encourage the Court to go back to the disclosures

10   and see what the opinions are.   The idea that the Defense is

11   going to be able to point to the witness and say:   You only got

12   this information from this informant.   That informant is a

13   convicted perjurer who was out of the country.   That is just

14   not going to happen.

15       As Mr. Sabelli even indicated, the opinions are broad.

16   They are not the Sonoma County Hells Angels is a criminal

17   enterprise, period.   It is:   What do the symbols mean?   How are

18   the Hells Angels constructed?

19       The opinions are the very opinions that have been blessed

20   by other RICO cases in this district and elsewhere.

21       And so the idea is we can undercut the ability of the

22   expert by facts that only the Defendants know have no basis.   I

23   think it will be the kind of thing that happens -- if it

24   happens, it will be the kind of thing that happened in *Serta*

25   (phonetic) -- where the question was, you know, you have the

1    opinion that the 19th Street Surenos deal drugs on this corner.

2    What is your basis for that opinion?

3        And the only response was "my training experience."  And

4    Judge Alsup found that blanket training and experience citation

5    wasn't enough for those opinions, and then those opinions were

6    removed.  But here --

7            **THE COURT:**  Well, I understand your point; that we

8    don't even need an evidentiary hearing.  This is a matter of

9    law.  It is gatekeeping.  I can look at the bases and see

10   whether they are adequate or not.

11       But I'm saying if I go further than that -- and given the

12   gravity of these proceedings -- why can't we proceed by --

13   start with the robust affidavit, which presents all the bases

14   you want to present, all the opinions your person wants to

15   present; and then pick up with cross?

16       It may be that cross ought to be truncated; ought to be

17   short.  We are not going to get into, you know, credibility

18   issues as if we were in trial.  But, you know, there is kind of

19   a fine line between -- at some point if the reliance is on

20   something that is totally incredible, maybe there is a

21   reliability problem.  I will have to see as we get there.

22       I understand your point that you think there ought to be

23   either no or very succinct truncated cross since it is a

24   Daubert hearing, not trial.  But we can address that when we

25   get there.

1      But my question is:  Can't we make this more efficient and

2   move this forward by starting with presenting the direct

3   testimony through a written -- written testimony rather than

4   having it put on the stand and taking a transcription of it?

5           **MR. CLOUGH:**  Excuse me.

6           **MR. BARRY:**  It is Kevin Barry again.

7      Yes, Your Honor, I think we can do that.  One of the -- it

8   might be helpful if the Court has reviewed the disclosures.

9   And if there are only some opinions that the Court feels don't

10  have a robust enough explicated bases, if the Court wants to

11  indicate these need more, we can direct an affidavit to just

12  those opinions.  That will streamline and truncate things quite

13  nicely.

14          **THE COURT:**  Well --

15          **MR. SABELLI:**  Your Honor, I want to remind the Court

16  that this is not --

17          **MR. BARRY:**  Your Honor, this is --

18          **THE COURT:**  Hold on.  One at a time.  Let Mr. Barry

19  finish.

20          **MR. BARRY:**  This is a decision for the Court in its

21  gatekeeping function.  And if Your Honor looks and says:

22  Enough for these 13 and these 7 need more, yes, we can

23  certainly do an affidavit for those and fill that in.

24          **THE COURT:**  Yeah, well, I think that would be

25  abandoning my role as a neutral arbiter.  I'm not here as a --

1    I think each party has to present their best case.

2        Mr. Sabelli, you had a comment.

3        **MR. SABELLI:**  Yes, I'm sorry.  I didn't realize

4    Mr. Barry hadn't finished.  I'm sorry, Mr. Barry.

5        We have been back and forth on this issue three times by

6    my counting.  And the Government has been warned by Judge

7    Beeler and by this Court that it had to make a showing.  And if

8    not, it was on the Government.  And now what appears to be

9    happening is the Government is requesting another opportunity

10   to do what it has been given three opportunities to do in the

11   past.  And that is --

12       **THE COURT:**  Well, wait a minute.  That's not fair.  I

13   said we are going to have an evidentiary hearing.  You wanted

14   an evidentiary hearing.

15       **MR. SABELLI:**  Yes.

16       **THE COURT:**  Obviously we are going to have a chance to

17   put on testimony by direct.  All I was suggesting was why not

18   do it by affidavit to which Mr. Barry said:  Well, we have

19   already kind of did that.  And I said:  Well, I'm going to give

20   you a chance.  We are going to do an evidentiary hearing, but

21   we are going to start off with an affidavit instead of putting

22   somebody on the stand and we listen for 8 hours or whatever it

23   is.

24       So they are not bound by that disclosure.  That disclosure

25   was intended as a prima facie disclosure.  Now, if he wants to

```
 1    rest on that, that's fine.  And we got what we got.  I'm not
 2    going to say you can't add anything to that.  I'm indicating
 3    that there was a lot of back and forth, as you say.  And one of
 4    your filings was:  Look at opinion number X.  There was no
 5    footnote to it.  And I have described that.
 6         MR. SABELLI:  So let me question the assumption that
 7    this is going to be more efficient.  Because just playing it
 8    out, what I think is going to happen is we will get an
 9    affidavit in the Court's proposal.  We will do a cross.
10         In the cross we will point out we don't know the identity
11    of such-and-such a person or we don't have this particular
12    report.  And then we will just have to have another interrupted
13    hearing with another level of disclosure from the Government
14    and we will have to come back again.
15         And that's the kind of thing you can take care of with an
16    expert on the stand being questioned on a direct examination.
17         THE COURT:  He will be on the stand for cross.  You
18    can ask him, you know, what is -- give me more information
19    about the basis of X.  You have identified -- did you know that
20    person was a convicted perjurer or whatever.
21         There is not -- I'm not going to pause again and let
22    Mr. Barry come back with another affidavit.  Oh, well, I'm
23    going to -- no, this is it.  I'm saying the opening will be on
24    paper rather than oral.
25         MR. SABELLI:  And if on the cross-examination a new
```

1    basis or new information is proffered by the Government expert,

2    that's too late, I assume, because --

3             **THE COURT:**  I don't know.  I don't know about that.

4    Why would it necessarily be -- I don't know.

5             **MR. SABELLI:**  Because the focus of a direct

6    examination and the purpose of the pre-hearing disclosures is

7    for the Defense to prepare to cross examine.

8             **MR. BARRY:**  Your Honor, this is Kevin Barry again.

9        There is one note to the proposed affidavit, the

10   Government would like the opportunity for redirect as well to

11   follow up on.

12            **THE COURT:**  There would be redirect and recross and

13   like -- we would handle it like anything else.  It is not going

14   to save an evidentiary hearing.  It is not going to save being

15   in court, whether this is live or virtual; but it will

16   certainly, I think, make things more effective especially since

17   one of the things that Defense Counsel wants is to be able to

18   bring a transcript and give it to clients and go over it.

19       And, well, we will have the affidavit.  That is a

20   transcript.  I mean I'm not -- so -- it is like a transcript.

21   It is just already done.  We don't have to go through the

22   exercise of having it done via direct examination.  Everything

23   else follows.  We would have cross.  We would have redirect,

24   like anything else.

25       We don't have to resolve this right now.  I raise this

1   because we are now trying to figure out how this fits with

2   timing and everything else, but I do want to put that on the

3   table because if we do decide to move forward and start

4   litigating these issues, I'm thinking that is one way that we

5   can move this forward and also meet some of the conditions --

6   some of the concerns that Mr. Wendt's Counsel has set forth.

7           **MR. BARRY:**  Your Honor, this is Kevin Barry.

8       The Government will -- we will do an affidavit.  If we can

9   have six weeks to submit it, we are happy with that proposed

10  procedure.

11          **MR. BUSTAMANTE:**  Your Honor, this is Mr. Bustamante on

12  behalf of Mr. Hefferman.

13      My understanding -- you can correct me, Your Honor -- is

14  that just as you just stated, this is a proposed option for

15  further discussion down the road given the circumstances that

16  were highlighted on page 3 of our status part 2(b) where we

17  talk about putting this matter over for the reasons stated.

18      So what I just heard the Court suggest is this is an

19  option if it can't get resolved between now and possibly the

20  next time that we meet, and we have an opportunity to meet and

21  confer and see if the courts open up by June 1st.

22      So is the Court now suggesting that this is a road we are

23  going to go down with a high degree of certainty or it is still

24  an option to be discussed down the road?

25          **THE COURT:**  Why don't we do this:  We are going to get

1  together, it sounds like, mid-June either way.  If you are

2  ready to file that affidavit by then, that's great because --

3  maybe you don't do anything yet, but let's find out exactly --

4  I mean, in all likelihood -- whether we have a live hearing, a

5  virtual hearing -- to me this makes some sense to have the

6  testimony written out.

7      And we can decide what the timing of the hearing is.  And

8  then you can serve that affidavit shortly thereafter if we

9  decide to have a hearing, you know, in July or whatever it is,

10  early August.  At least we will be ready to go.

11      What I don't want to do is sort of do nothing.  And then

12  decide in June, okay, let's go forward with a hearing starting

13  with the affidavit.  And then the Government says:  Well, then

14  we need six more weeks.  And by that time we are in August just

15  to start the process.

16      And if we are actually looking at a December trial date,

17  that is going to be tight.  So I think what I would like to do

18  is -- we don't have to make a final decision yet on exact

19  timing and form of the hearing -- of the Daubert hearing, but

20  my intent is to have it move forward shortly thereafter.  And

21  the Government can wait until that hearing to file the

22  affidavit.

23          **MR. BARRY:**  Thank you, Your Honor.

24          **THE COURT:**  In all likelihood, that's the direction

25  I'm going to go -- whatever the timing -- it seems to me to

1   make sense.

2       And I will say I guess the one thought -- the point that

3   Mr. Sabelli made, and that is -- that affidavit should contain,

4   you know, all the bases that the expert is going to use and

5   not -- if he decides to come up with something or comes up with

6   something that is new and different, there is a chance that

7   that is going to be beyond the scope.  So we should treat it as

8   direct.  You know, put in everything you got is my advice.

9           **MR. BARRY:**  I understand, Your Honor, thank you.

10          **THE COURT:**  Okay.  So let's -- now, we talked about

11  there is a problem with the scheduling date in June, somebody

12  mentioned?

13          **MR. THOMSON:**  Your Honor, this is James Thomson.  I

14  would like to just kind of start this thing off because I

15  worked with the courtroom deputy about possible dates.  And

16  then I will get off the phone with you.

17      I found out that the dates that are available are

18  June 23rd, June 26th, June 30th and then July 17th and

19  July 24th.  I did a poll of -- actually several polls of

20  Defense Counsel and the U.S. Attorney to try to find out dates

21  that were, you know, agreeable to all.

22      The last round of that poll came out much too soon and too

23  quick to the court appearance, so I wasn't able to get all of

24  the answers for all of the clients.  But if we do them

25  chronologically, June 23rd, there are two Counsel that say no

1   to and then several who have not responded.  June 26th, there

2   are four counsel that say no to.  And June 30th there is one

3   counsel that has said no to but several that have not

4   responded.  July 17th, everyone is agreeable to attend with the

5   exception of one counsel who I did not hear back from.  And

6   July 24th, it looks like all but one -- although that is me.  I

7   can probably rearrange my schedule on that one -- is agreeable.

8       So I don't know about June 30th or June 26th for the

9   missing people or June 23rd for the missing people.

10      **THE COURT:**  June 23rd is a Tuesday.  That is a day

11  that we have time slots although I don't know with Santa Rita.

12  I'm just thinking in terms of, you know, the interests of those

13  who are detained to be able to listen in.  I don't know whether

14  we can get -- 23rd, you say there are two counsel --

15      **MR. THOMSON:**  There are two counsel -- Mr. Novak and

16  Mr. Walsh -- who cannot attend on that date.  And then there

17  are one, two, three, four, five counsel that I have not heard

18  back from.

19      **MR. WALSH:**  Your Honor, this is John Walsh on behalf

20  of Christopher Ranieri.  I can make the 23rd.  I will just have

21  to rearrange something.

22      **OTHER ATTORNEY:**  So there is one counsel who said --

23  Mr. Novak said he cannot.  I don't know about Mr. Waggener or

24  Ms. Morrissey on the 23rd, Your Honor.

25      **MR. NOVAK:**  Your Honor, this is Richard Novak.  With

1  respect to the 23rd at the moment, I'm supposed to start

2  selecting a jury before District Judge Kronstadt in Los Angeles

3  on that day.  I believe that matter will be postponed, but I

4  can't make that representation at this point.

5          **THE COURT:**  All right.

6          **MR. WAGGENER:**  Mr. Waggener for Mr. Ott, I'm available

7  on June 23rd.

8          **THE COURT:**  Okay.

9          **MS. MORRISSEY:**  Marcia Morrissey for Mr. Ott as well,

10  and I am available on June 23rd.

11          **THE COURT:**  All right.

12          **MR. THOMSON:**  The only other person who was missing

13  was Mr. Boisseau.

14          **MR. BOISSEAU:**  I'm available June 23rd.

15          **MR. THOMSON:**  I don't mean missing.  In fairness

16  again, Your Honor, the last poll got sent out late.  Some

17  people didn't get a chance to respond to me.  I'm not saying

18  anybody didn't return my call, so to speak.  Ms. Pollack was

19  the other person I didn't get a response from.

20          **MS. POLLACK:**  The 23rd?

21          **MR. THOMSON:**  The 23rd.

22          **MS. POLLACK:**  I'm available.

23          **MR. THOMSON:**  And then Mr. Clough?

24          **MR. CLOUGH:**  Sorry.  I thought I responded that I

25  would accommodate whatever schedule everybody said.  That was I

1    think the first response I sent back.

2           **MR. THOMSON:**  I may not have seen that.  I apologize,

3    Mr. Clough.

4        So that means with Mr. Novak -- with Mr. Novak's

5    situation, everyone is available on the 23rd.

6           **MR. NOVAK:**  Your Honor, let me add one more thing, if

7    I may.  This is Richard Novak.

8        I don't know exactly what the agenda will be on June 23rd.

9    And, of course, I have very able co-Counsel who could represent

10   Mr. Nelson.

11       The next day June 24th is the next scheduled hearing

12   before Judge Koh in the matters of Mr. Chavez and Mr. Scheetz,

13   and I cannot make any formal representations about what will

14   happen; but Judge Koh has opened up a conversation, if I can

15   call it that, about whether a very detailed scheduling order

16   which leads to a trial in July -- which I have told the Court

17   about -- whether that will hold.

18       So I just want the Court to know that it may be on

19   June 24th I can give Your Honor -- after June 24th, I should

20   say, I can give Your Honor more information about Judge Koh's

21   plans for us in that matter.

22       It may be that meet-and-confers and some stipulation

23   before that resolve that before the 23rd, and I don't really

24   want to say too much because I'm going to get into some Rule 6

25   issues.  And Government Counsel on that matter aren't here.

```
 1        I just want to say there is a conversation, but there is
 2   certainly no agreement about that.
 3        THE COURT:  Well, I think we should go forward with
 4   the 23rd.  You will know hopefully something.  You may or may
 5   not know definitively.  It may or may not affect -- we
 6   understand you have a tentative trial date in July with Judge
 7   Koh.  I think by the 23rd you are going to have a pretty good
 8   sense where that is -- where that might be going.
 9        MR. NOVAK:  And I will endeavor in that direction but
10   I just -- I don't know.  That's all.
11        THE COURT:  Well, it seems to me --
12        MR. THOMSON:  Your Honor, I did not contact the
13   courtroom deputy about the timing or the time of the hearing,
14   but we did work on that date at least.
15        THE COURT:  Angie, the afternoon -- I mean, that would
16   coincide with -- if we can try to get those who are detained in
17   Santa Rita plugged in -- that at least opens the possibility we
18   can reserve some time there.  So it would be in the afternoon.
19        Angie, you are on mute.  Do you want to chime in?
20        THE CLERK:  I will have to get a time slot available.
21        THE COURT:  All right.  But presumably it would be
22   somewhere around 1:00 or 1:30, somewhere in the afternoon.  If
23   all of you can keep your calendars clear for the afternoon, it
24   will probably be around 1:00 or so.  We will try to -- I assume
25   it is your preference -- those of you who have clients in Santa
```

1   Rita -- be able to participate?

2          **MR. SABELLI:**  Yes, Your Honor.

3          **THE COURT:**  All right.  Well, we will work and see if

4   we can try to do that.  And so at that point you will now --

5   you will have then had the additional disclosures and materials

6   and talk about a pre-litigation schedule and about potential

7   groupings.

8          And I guess I forgot to ask.  I take it there is still no

9   word from Washington D.C., Mr. Barry?

10         **MR. BARRY:**  This is Kevin Barry.

11         That's correct, Your Honor.  We check in every week.  The

12  response today is status quo unfortunately.  As soon as I hear

13  either way, I will certainly let all the parties and Court

14  know.

15         **THE COURT:**  All right.  Well, we will have more

16  information then.  I will be prepared and I think the parties

17  will be prepared with a concrete proposal as to how we go

18  forward.  And I'm particularly interested in even before then,

19  I guess, you are proposing May 11th to develop a pretrial

20  litigation schedule?  I think that will be very helpful as

21  well.

22         **MR. SABELLI:**  Yes, Your Honor.  We asked for ten days.

23  We should be able to turn it around in that timeframe.

24         **THE COURT:**  All right.  Is there anything else that we

25  need to discuss today?

**MR. PHILIPSBORN:**  Your Honor, this is Philipsborn on behalf of Mr. Wendt.

Just -- I think, more than anything so that we have placeholders on our arguments on this, for the record, we have already submitted all of these arguments in writing -- we are reiterating our motion that you set an NOI date for all of the reasons that have already been argued.

The only additional matter that I wanted to tender again -- more in the spirit of place-holding or providing the Court information to avoid problems down the line -- like some other Counsel on this call, I am answering to other courts including the court -- a state court that thinks it might try to select a capital case jury in Marin County in the beginning of July.

The only reason I bring that up is, first of all, the Judge in that case knows that I have asked for time off to attend hearings before you and is -- has that under consideration.  But the main concern is if we don't actually try to get a decision or -- for that matter as the Wendt team has tried to do -- force the decision on the elephant in the room on the death penalty issues, I think the Wendt team has concern that if we happen to be wrong on the probability of an authorization in this case and the Government actually goes forward with an authorization process, Brian Wendt and his Defense team don't want to be caught in the position in which,

1    you know, the lawyer he has who has some death-penalty related

2    litigation experience and actual authorized death cases is

3    essentially taken off the table by the passage of time at a

4    time at which I should have been participating in the

5    authorization process.

6        So to come in for a landing, if you are not going to -- if

7    we are not actually going to follow through -- and I understand

8    there are logical and factual reasons for you to move the

9    further discussion about trial dates and other related matters

10   down the line -- again, I would hope that you would set an NOI

11   date today.

12       But if you are not inclined to do that, I would ask that

13   we re-visit the discussion at the next calling of the case

14   because -- for all of the reasons stated.  And I think it is

15   still our view that -- you know, as I have said several times

16   before, both as provided for in the death-penalty protocols

17   themselves, the DOJ's death-penalty protocols, and also by

18   common experience among death penalty lawyers -- it has an

19   amazingly motivating effect on DOJ when a district court judge

20   issues a -- an order on an NOI, and we really are at that

21   point.

22       I submit the matter.

23           **THE COURT:**  All right.  As I indicated last time, I

24   was prepared and I am prepared to set an NOI date once we have

25   a trial date.  I already warned the Government of a short fuse;

once we set the trial date, if that trial date is December or

January or somewhere in that timeframe, there is going to be a

short fuse.  But I looked at the case law and don't see any

authority at this point to set one that is not tied to or

anchored in any way to a trial date.

And so for all the reasons why I think the -- you know, we

want to move this forward, and I think you have indicated on

behalf of your client, you wanted to have an early trial date,

that was my command.

So I am prepared to set that date, NOI date, if we set a

trial at the next calling of the case.  And as I indicated

before, it will be a short time fuse because I think I can set

that date fairly substantially in advance of the actual trial

date.  I'm not afraid to set that in advance once I have a

trial date.

**MR. NOVAK:**  Thank you, Your Honor.

**THE COURT:**  Okay.  Anything else?

**MR. WAGGENER:**  Robert Waggener on behalf of Mr. Ott,

Your Honor.

I filed a status report regarding some discovery issues

that the Government and I and Defense Counsel are working out.

I'm not going to get into the weeds in terms of the particulars

of that because we have some continuing dialogue.  But, you

know, the big issue that is going to come up that is not going

to be resolved with that dialogue is going to be the timing of

the disclosure of certain items and whether they are done at
the time the Government produces a witness list or some time
beforehand by AEO or otherwise.

That is going to be a big issue.  And I don't know whether
the Court wants to take that up now or plan to do that on
June 23rd but whether it might be something that we go back to
Magistrate Beeler to discuss.

**THE COURT:**  We have been working with Magistrate
Beeler.  She has an overall sense of things, and I would like
you to go to her.  I will speak with her.

I understand the importance of getting some of these
disclosures, and I understand the Government's concern too.
But it seems like up until now we have been able to work out a
lot of things through the AEO procedure.  And I think that is
something we can work out as well.  But if you would go back
and make sure that Judge Beeler is plugged into this process,
that would be helpful as well.

All right.  So we will set the exact time once we get the
time slots from Santa Rita but afternoon of the 23rd for the
status.  And hopefully we can close the loop on some of these
outstanding matters and get a clear sense of back to trial
groupings timeline and everything else.

**MR. BARRY:**  So, Your Honor, this is Kevin Barry for
the Government.

I think that the time is excluded automatically through

1    the pendency of Mr. Wendt and Mr. Nelson's motions to exclude

2    the experts; but, you know, there still is the need to review

3    the discovery that has been produced and will be produced.

4    I believe the case is still complex.  So I wonder if the Court

5    will enter an order excluding time on this basis -- I think it

6    will automatically be excluded but just in an abundance of

7    caution.

8            **THE COURT:**  Any objection by anybody to -- for further

9    exclusion of time?

10           **MS. POLLACK:**  No, Your Honor.

11           **MR. BOISSEAU:**  No.

12           **THE COURT:**  All right.  It appears that all Counsel

13   agree.  And, Mr. Barry, if you can prepare a time exclusion

14   order for the record, I appreciate it.

15        So time will be excluded on the bases that were stated;

16   that there is a pendency of a motion.  Time needed for

17   effective preparation of Defense given the outstanding matters

18   that still need to be produced by the Government and reviewed;

19   the extent of the materials that still need to be reviewed by

20   Counsel and given the complexity of the case.

21        Time is excluded.  Find that the ends of justice outweighs

22   the public's and the Defendants' interest in a speedy trial.

23   The time is excluded until the next calling of the case which

24   is June 23rd.

25        All right.  If there is nothing further, we will adjourn.

1          **MR. BARRY:**  Thank you, Your Honor.

2          **MR. SABELLI:**  Thank you, Your Honor.

3          **MR. WALSH:**  Thank you, Your Honor.  John Walsh on

4     behalf of Mr. Ranieri, and I ask that his presence at the next

5     calling be excused.

6          **THE COURT:**  All right.  It will be waived.  Thank you.

7          **MR. WALSH:**  Thank you.

8          **THE CLERK:**  Court is adjourned.

9                (Proceedings adjourned at 2:38 p.m.)

10                    ---oOo---

11               **CERTIFICATE OF REPORTER**

12          We certify that the foregoing is a correct transcript

13     from the record of proceedings in the above-entitled matter.

14

15     DATE:   Wednesday, September 2, 2020

16

17

18

19     _____

20               Marla F. Knox, RPR, CRR
                  U.S. Court Reporter

21

22

23

24

25