1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  KEVIN J. BARRY (CABN 229748)
   AJAY KRISHNAMURTHY (CABN 305533)
5  LINA Y. PENG (NYBN 5150032)
   Assistant United States Attorneys
6
        450 Golden Gate Avenue, Box 36055
7       San Francisco, California 94102-3495
        Telephone: (415) 436-6840
8       FAX: (415) 436-7234
        Email: kevin.barry@usdoj.gov
9
   Attorneys for United States of America
10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                      SAN FRANCISCO DIVISION
13

14  UNITED STATES OF AMERICA,              )  CASE NO. CR 17-0533 EMC
                                           )
15           Plaintiff,                    )  **UNITED STATES' OPPOSITION TO**
                                           )  **DEFENDANT'S MOTION FOR RELEASE**
16      v.                                 )
                                           )
17  RAYMOND FOAKES, et al.,                )  Hearing:    August 18, 2021
                                           )  Time:       10:30 am
18           Defendants.                   )
    _____)  Hon. Joseph C. Spero
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................1

**STATEMENT OF FACTS**....................................................................................1

**A.**   **Procedural History of the Detention Issue**.............................................1

**B.**   **Case Developments Since December 2020**...............................................3

     **1)**   **The Order to Show Cause Proceeding**.........................................3

     **2)**   **The Government's Efforts to Bring Defendant Foakes to Trial**.................................4

**ARGUMENT**........................................................................................................7

**I.**   **Defendant Presents No Basis To Reopen The Detention Hearing**.............7

**III.**   **Defendant's Pretrial Detention Does Not Violate Due Process**...............8

     **A.**   **The Legal Framework**....................................................................8

     **B.**   **The Government Interest Merits Pretrial Detention In This Case**.............................10

     **C.**   **The Government Has Not Created Delay Since the Last Due Process Order**.................14

     **D.**   **The Court Has Denied Release In Similar Circumstances**.................15

**CONCLUSION**...................................................................................................17

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Barker v. Wingo*, 407 U.S. 514 (1972) ........................................................................ 6

*Beavers v. Haubert*, 198 U.S. 77 (1905) .................................................................... 6

*Bell v. Wolfish*, 441 U.S. 520 (1979) .......................................................................... 5

*United States v. Loud Hawk*, 474 U.S. 302 (1986) .................................................... 6

*United States v. Accetturo*, 783 F.2d 382 (3rd Cir. 1986) .................................... 9, 10

*United States v. Ailemen*, 165 F.R.D. 571 (N.D. Cal. 1996) .................................... 6

*United States v. Chen*, 820 F. Supp. 1205 (N.D. Cal. 1992) ................................... 8, 9

*United States v. El-Hage*, 213 F.3d 74 (2d. Cir. 2000) ............................................ 5

*United States v. Gatto*, 750 F. Supp. 664 (D.N.J. 1990) ......................................... 10

*United States v. Gelfuso*, 838 F.2d 358 (9th Cir. 1988) ................................ 5, 6, 9, 11

*United States v. Gonzales-Claudio*, 806 F.2d 334 (2nd Cir. 1986) ......................... 10

*United States v. Hare*, 873 F.2d 796 (3rd Cir. 1989) ............................................. 10

*United States v. Hare*, 873 F.2d 796 (5th Cir. 1989) ............................................... 4

*United States v. Martin*, No. 13–cr–00466–JSW (KAW), 2015 WL
    3464937 (N.D. Cal. May 29, 2015) ...................................................................... 3

*United States v. Milan*, 4 F.3d 1038 (2d. Cir. 1993) ................................................ 5

*United States v. Omar*, 157 F. Supp. 3d 707 (M.D. Tenn. 2016) ............................ 9

*United States v. Orena*, 986 F.2d 628 (2d. Cir. 1993) .............................................. 5

*United States v. Reginald Elmore*, CR 13-0764 WHO (N.D. Cal.) ................ 11, 12, 13

*United States v. Salerno*, 481 U.S. 739 (1987) ........................................................ 5

*United States v. Torres*, 995 F.3d 695 (9th Cir. Apr. 23, 2021) .......................... 9, 10

*United States v. Vondette*, 5 Fed. Appx. 73 (2d. Cir. 2001) .................................... 5

*United States v. Ward*, 63 F. Supp. 2d 1203 (C.D. Cal. 1999) ............................... 3

*Vermont v. Brillon*, 556 U.S. 81 (2009) .................................................................... 6

**FEDERAL STATUTES**

18 U.S.C. § 3142(f) .................................................................................................. 3, 4

**INTRODUCTION**

Defendant Raymond Foakes has moved the Court to reopen the detention hearing and order him released because of the length of his pretrial detention. Defendant also argues that he should be released on due process grounds. The motion is essentially a resubmission of identical arguments that the Court has already heard and denied. While Defendant cannot reopen the detention hearing under 18 U.S.C. § 3142(f), he is entitled to bring a due process challenge to pretrial custody. However, the government is not responsible for the delay since his due process claim had previously been considered and rejected. For these reasons, the Court should deny Defendant's motion.

**STATEMENT OF FACTS**

**A.      Procedural History of the Detention Issue**

On September 11, 2018, the Grand Jury returned a Superseding Indictment against Defendant and several others charging him with RICO conspiracy because of his membership in the Sonoma County Hells Angels, an organization that has violence and intimidation at its core. Defendant was also charged with the brutal beating and maiming of an individual named in the Indictment as Victim 5, and with the sexual assault and witness intimidation of an individual named in the Indictment as Victim 6. The two assaults took place barely a month after Defendant was released from custody following a 70-month prison term. *See* CR 11-0624 WHA, Dkt. 322 (N.D. Cal. November 29, 2016) (Form 12 showing that supervision began on October 21, 2016, and that the assaults happened on November 26, 2016).

Defendant was charged with those assaults, as well as other offenses, through a Form 12 petition. Defendant admitted to the non-assault charges, including association with members of the Hells Angels, on March 14, 2017. *Id.*, Dkt. 337. Judge Alsup sentenced Defendant to a term of 24 months in custody as a result. *Id.*, Dkt. 336. He finished that term in roughly September 2018. *See id.*, Dkt. 336 (24-month term); Dkt. 328 (warrant for the Form 12 returned executed on November 30, 2016).

Following the expiration of his term in custody for the supervised release violations, Defendant moved the Court to be released on bail. *See* CR 17-0533 EMC, Dkt. 441 (October 31, 2018 Minute Order referencing detention hearing). After hearing argument, the Court ordered Defendant remanded to custody. Dkt. 447 (November 6, 2018 Order of Detention). In doing so, the Court held that "Defendant poses a risk of danger to the community, and because no condition or combination of

conditions will reasonably assure the safety of the community, the Court orders that he be detained

pending trial." *Id.* at 1:25-27. The Court found that the fact that Defendant was serving a term of

supervised release when the government alleges he committed the crimes in the Superseding Indictment

was a critical factor. It further observed that:

> Defendant has a lengthy criminal history, and he has repeatedly had his periods of
> probation or supervised release amended or revoked because of new criminal activity.
> The Court's review of his record indicates a number of instances where Defendant failed
> to complete a period of court supervision without incident. These include the 1995 and
> 1996 revocations of his probation for a misdemeanor illegal possession of a weapon
> conviction; the 2000 parole violation and return to custody for his evading a police
> officer, false imprisonment, and possession of methamphetamine felonies; the 2010
> revocation of his supervised release stemming from a conviction for violent crime in aid
> of racketeering; and the 2016 revocation of his term of supervised release from a wire
> fraud and money laundering conviction.

*Id.* at 2:5-13. The Court concluded that "Defendant's family and community support are not sufficient

to mitigate this history of criminal convictions and poor performance while on supervision." *Id.* at 2:14-

15.

On July 22, 2019, Defendant moved to reopen the issue of his detention. The only new issues he

raised were: (1) "Since the last appearance before this Court, the half-way house is now available"; and

(2) "it appears that FOAKES will not face trial for another two-years." Dkt. 721 at 12:19-20.

Defendant presented the first point as new and material fact sufficient to reopen the issue of detention.

Defendant presented the second point in the form of a due process challenge to his detention. On

August 9, 2019, this Court denied the motion and maintained the order remanding Defendant to custody.

Dkt. 759 (Minute Order); Dkt. 863-1 (Transcript of August 9, 2019 hearing).

On November 5, 2019, Defendant moved Judge Chen to reverse that order and to allow him to

be released on bond. Dkt. 863. On November 20, 2019 Judge Chen denied that motion and affirmed

this Court. Dkt. 876.

On November 10, 2020, Defendant moved to reopen the issue of detention once again. Dkt.

1284. He raised the same issues as he did in 2019. While that motion was pending, Defendant

requested an emergency temporary release to visit his dying mother. This Court granted the motion with

strict conditions, Dkt. 1300, but Defendant's mother passed away before the temporary release could be

effected. Dkt. 1302. The Court then held a hearing on the motion for general release and denied it. Dkt. 1331. Defendant appealed to Judge Chen, and Judge Chen affirmed this Court in December 2020. Dkts. 1339, 1375.

### B. Case Developments Since December 2020

As discussed below, the only basis for Defendant's motion for release is the argument that his continued pretrial detention violates due process. The Court found nine months ago that detention to that point did not give rise to a due process claim, so the issue now is whether the additional time changes that conclusion.

In the nine months since the Court found no due process violation, the parties have advanced the case.[1] The government has continued to produce discovery including significant volumes of electronic data; it has litigated a *Daubert* issue regarding the government's CAST expert (cell-site location); it has litigated multiple motions for severance, motions to dismiss, motions for bills of particulars, and motions to continue the trial. Most significantly for Defendant Foakes, the Court has also litigated a motion for an Order to Show Cause regarding a breach of the Attorneys' Eyes Only Protective Order by Defendant's counsel and a motion to add Defendant Foakes to the defendants to be tried in Trial Group One, whose trial will commence in January 2022. The latter two issues are critical for the Court's assessment of Defendant's due process argument.

#### 1) The Order to Show Cause Proceeding

In January 2019, the Court entered an Attorney's Eyes Only Protective Order to govern the government's production and the defense's handling of sensitive information, particularly information regarding witnesses who provided information about the Hells Angels. Dkt. 517. In the Summer of 2019, Judge Beeler ordered the government to produce materials that would serve to identify cooperating witnesses to the defense under that AEO Protective Order, along with some additional precautions. The government made productions pursuant to that order in August and October 2019.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[1] There have been nearly 450 docket entries since Judge Chen affirmed the Court's denial of Defendant's earlier due process motions in December 2020.



**2)  The Government's Efforts to Bring Defendant Foakes to Trial**

As Defendant has indicated in his motion, there is an initial group of defendants scheduled to go to trial in January 2022, and Defendant is not among that group.  Dkt. 1941 at 8:21-22.  What he omits is that the government has repeatedly requested that Defendant Foakes be included among that first group of defendants.  Dkts. 1007, 1074.  Unfortunately, Judge Chen elected to have an initial group of only

three, with trial set initially set for October 2021, later moved to January 2022 at other defendants' request, and without Defendant Foakes.

Even after Judge Chen's decision to exclude Defendant from the first trial group, the government continued its efforts to have Defendant brought into that trial. In January 2021, roughly a month after Judge Chen denied Defendant's last due process challenge, the government indicated that it would seek to include him in Trial Group One if conditions related to the COVID-19 pandemic improved. *See* Dkt 1425 (Transcript of January 13, 2021 Hearing).

> [Government counsel:] [W]e would like to keep the [October 2021] trial date. You know, we have an interest in getting, not only Mr. Wendt, but also Mr. Foakes's trial. If there is some break in the pandemic and we're able to move forward in the normal course, we would, as we have indicated, we would ask to put Mr. Foakes in that trial group so he can get to trial, as well as the defendants who are out of custody.

*Id.* at 100:11-17. In later hearings, the government continued to express its desire to have Defendant tried first.

> [Government counsel:] But I just wanted to repeat that again so, sort of, Mr. Foakes is on notice that we are trying to get him his trial as quickly as possible, but I don't know if it will work. But, again, that's the Government's thinking. We would prefer to have him, since he's in custody, in that first trial group, if at all possible.

Dkt. 1551 at 47:1-11 (Transcript of February 24, 2021 hearing).

On June 23, 2021, the Court issued General Order 78, which lifted many of the pandemic-related restrictions on Court operations enacted through General Orders 72 and 73. In light of that order and the opening of society in general through mass vaccinations, the government moved to expand Trial Group One and to include Defendant Foakes in that initial group. Dkt. 1865.

Defendant opposed that motion. Dkt. 1875. Foakes offered several reasons why he could not go to trial in January 2022. The first was availability of counsel. "Foremost among the host of problems this late request presents is the fact that the undersigned counsel is scheduled for trial in a homicide case before the Honorable William H. Alsup, *United States v. Robert Manning, et al.*, CR-19-0313-WHO, on December 6, 2021." *Id.* at 2:1-3. The second basis was a claim that he would be prejudiced by inclusion in a trial with defendants who were charged with murder—a crime in which he did not

participate. "It must be pointed out that FOAKES has always contended that he should not be part of the first trial group because he was not charged with either the conspiracy to commit murder or the murder of Joel Silva, Counts Two and Three of the Superceding Indictment." *Id.* at 2:15-18. The third basis for his opposition was the pendency of the Order to Show Cause proceeding.

> Finally, there is the issue of the Order to Show Cause (OSC) brought against the undersigned. Based on an accusation dating over a year before the government filed its OSC, and now eight months into the OSC proceedings, a recommendation has been made which only further complicates the ability of the undersigned to properly prepare for a trial which is scheduled to begin January 10, 2022. It is anticipated that final resolution of the matter is months away but the immediate effect is to make it impossible to be ready for trial with the first group. Moreover, there is no simple solution to this problem and possible remedies do not factor in the ability of the undersigned to prepare for an immediate trial. The issues may crystalize, or even go away, with time and re-designation of certain "protected" discovery. Nevertheless, such [a] solution will not be available in time to go to trial with the first trial group.

*Id.* at 2-3.

Judge Chen denied the government's request to add Defendant to the first trial group. Dkt. 1897 (Minute Order from July 9, 2021 hearing). The Court based its decision largely on the findings and recommendations made by Judge Kim in relation to the Order to Show Cause Proceeding. ". . . I think it's obvious now with the OSC ruling [by Judge Kim] and now the appeal, which I will be hearing shortly, that certainly complicates things and makes it particularly unfeasible, it seems to me, to have Mr. Foakes included for trial[.]" Dkt. 1934 at 7:12-14 (Transcript of July 9, 2021 hearing). "I think the situation with Mr. Foakes is obvious. There's no way that with the counsel situation and the issues that have arisen out of the OSC, that that's going to be resolved in a way that will allow him to prepare for trial." *Id.* at 17:6-9.

Three and a half weeks after Judge Chen's order denying the government's request to include him in Trial Group One, Defendant filed the motion for release currently before the Court. Dkt. 1941. It is essentially identical to the motion the Court denied last year, with the only change being the additional nine months of detention. *Compare id. with* Dkt. 1284.

**ARGUMENT**

**I.     Defendant Presents No Basis To Reopen The Detention Hearing**

The Bail Reform Act provides a mechanism for re-opening a detention hearing, but only "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue" of detention.  18 U.S.C. § 3142(f).  Courts interpret this provision strictly.  *United States v. Ward*, 63 F. Supp. 2d 1203, 1206 (C.D. Cal. 1999).  Under Section 3142(f), defendants must meet two requirements: (1) they must demonstrate that information now exists that was not known to the movant at the time of the initial detention hearing; and (2) they must establish that the new information is material to release conditions regarding flight or dangerousness.  *United States v. Martin*, No. 13–CR–00466–JSW (KAW), 2015 WL 3464937, at *2 (N.D. Cal. May 29, 2015) (citing *United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991)).  "In other words, the unknown information is material if it increases the chances the defendant appears for his criminal hearing or decreases the danger the defendant poses to an individual or the community as a whole."  *Id.*

Here, Defendant offers no new material information.  The only point he presents is the fact that he has remained in pretrial detention.  "While courts have interpreted §3242(f) strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing, in this case it is the unreasonable length of the pre-trial detention which is the reason for reopening the detention hearing."  Dkt. 1941 at 9:3-6.

In the context of Section 3142(f), this is insufficiently new and material.  "Nor can the length of his current or potential future detention be considered under this section [18 U.S.C. § 3142(f)] since it is not material to the issue of risk of flight or dangerousness."  *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).[2]  The duration of pretrial detention can, however, give rise to a due process challenge, discussed below, but that is a different from reopening the detention hearing under the Bail Reform Act.  *See id.* at 801 (rejecting effort to reopen detention under Section 3142(f) but remanding for due process analysis); *see also United States v. Accetturo*, 783 F.2d 382, 384 (3d Cir. 1986) ("Thus, a determination under the Bail Reform Act that detention is necessary is without prejudice to a defendant petitioning for

---

[2] Defendant cites *Hare* in his motion.  Dkt. 1941 at 9:10-11.

release at a subsequent time on due process grounds.").

For this reason, the Court must deny Defendant's bid to reopen the detention hearing. Defendant is procedurally barred from re-litigating the merits of his detention, and the Court's previous findings that Defendant poses both a flight risk and a danger to the community and that the risk cannot be mitigated by any condition or combination of conditions remain in place.[3]

Defendant's motion does, however, pose a question for the Court to adjudicate: does the fact that he has been in custody for slightly less than three years pending trial so offend due process that he must be released? This due process challenge based on the length of detention is properly before the Court, but the lack of a due process violation is what guided the Court's earlier denials of essentially the same request for relief.

## III. Defendant's Pretrial Detention Does Not Violate Due Process

### A. The Legal Framework

There is no bright line test to determine when a prolonged pretrial detention becomes a constitutional violation. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. The Due Process Clause plainly prohibits punishing a pretrial detainee prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). However, it is well settled that a defendant accused of committing a crime may be detained prior to a formal adjudication of guilt. *Id.* (citing *Gerstein v Pugh*, 420 U.S. 103, 111–14 (1975)); *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) ("pretrial detention under the Bail Reform Act is regulatory, not penal"). There is little guidance in the case law, however, regarding the precise point at which pretrial detention violates due process. *See, e.g.*, *United States v. Orena*, 986 F.2d 628, 631 (2d. Cir. 1993) (length of detention alone is not dispositive and "will rarely by itself offend due process"); *United States v. Vondette*, 5 Fed. Appx. 73, 75-76 (2d. Cir. 2001) (holding that defendant's 40 month pretrial detention did not violate due process where defendant was leader of a drug enterprise and faced life imprisonment); *United States v. El-Hage*, 213 F.3d 74, 78-81

---

[3] Because Section 3142(f) bars reopening of the issue of detention, the government will not repeat its arguments for Defendant's detention. Should the Court wish to review them, the government respectfully directs the Court its opposition to Defendant's prior motions to revoke the release order. Dkts. 748 and 870.

(2d. Cir. 2000) (finding that a 30 to 33 month pretrial detention did not violate defendant's due process rights); *United States v. Milan*, 4 F.3d 1038 (2d. Cir. 1993) (a 30 month period of detention did not violate defendant's due process rights).

The Ninth Circuit recognized as much thirty years ago, noting that "[s]everal Circuits have recognized that the length of pretrial detention raises a constitutional issue at some point . . . . The Supreme Court, however, has declined to identify at what point pretrial detention might be excessively prolonged and therefore punitive rather than regulatory." *United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) (citing *Salerno*, 481 U.S. at 747 n. 4.). The Ninth Circuit explained that "the due process limit on the length of pretrial detention requires assessment on a case-by-case basis. We consider the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued." *Gelfuso*, 838 F.2d at 359. There are few cases, however, implementing that guidance.

Recently, the Ninth Circuit found no due process violation with a 21-month period of pretrial detention, but it suggested that additional time could impact due process. *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. Apr. 23, 2021) (citing *Gelfuso*, 838 F.2d at 359-60). *Torres*, however, involved significantly less serious charges than Defendant faces here. That case arose from a traffic stop where the defendant was found with of two rounds of ammunition and less than two ounces of methamphetamine. *Id.* at 699.

As an initial matter, it is important to identify the parameters of the Due Process Clause of the Fifth Amendment. The Supreme Court succinctly described the relevant concepts in *Salerno*:

> This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172, [], or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325–326, [] (1937). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge*, 424 U.S. 319, 335, [] (1976). This requirement has traditionally been referred to as "procedural" due process.

481 U.S. at 746. The question raised by Defendant's motion is one of substantive due process; that is, whether his continued pretrial detention (on charges that include racketeering, maiming, sexual assault,

1    and witness intimidation) "shocks the conscience" or impermissibly interferes with rights "implicit in

2    the concept of ordered liberty."

3        The Supreme Court has recognized for more than a century that the constitutional right to a

4    speedy trial is not "so unqualified and absolute" that it must prevail over "the demands of public

5    justice." *Beavers v. Haubert*, 198 U.S. 77, 86 (1905). Instead, "[i]t is consistent with delays [and]

6    depends upon circumstances . . ." *Id.* at 87; *see also Vermont v. Brillon*, 556 U.S. 81, 89-90 (2009). The

7    Sixth Amendment does not establish a requirement for a defendant to proceed to trial within a certain

8    number of days. *See Brillon*, 556 U.S. at 89–90. To the contrary, the concept of "speedy" depends in

9    each case upon both the private and public interests in an efficient, fair, and effective justice system.

10   *See United States v. Loud Hawk*, 474 U.S. 302, 312-13 (1986). In striking the appropriate balance, the

11   courts have recognized that the contours of the right are difficult to describe because what may be

12   considered "speedy" is necessarily specific to each case. In attempting to define the meaning of the

13   word "speedy" under the Sixth Amendment, the Supreme Court has found it "'amorphous,' 'slippery,'

14   and 'necessarily relative.'" *Brillon*, 556 U.S. at 89 (quoting *Barker v. Wingo*, 407 U.S. 514, 522

15   (1972)). For example, "delay that can be tolerated for an ordinary street crime is considerably less than

16   for a serious, complex conspiracy charge." *Barker v. Wingo*, 407 U.S. 514, 531 (1972). The same is

17   true here regarding the reasonableness of Defendant's continued pretrial detention. *See Gelfuso*, 838

18   F.2d at 359 (requiring case-by-case analysis for each defendant).

19       Case law has not provided a framework for analysis of whether pretrial detention violates due

20   process, but the basic principle is that the government interest in detaining the defendant must be

21   weighed against the length of detention. *See. e.g.*, *United States v. Ailemen*, 165 F.R.D. 571, 578 (N.D.

22   Cal. 1996). Courts also must consider the evidence in favor of detention and whether the government is

23   responsible for pretrial delay. *Gelfuso*, 838 F.2d at 359; *Torres*, 995 F.3d at 708.

24       **B.    The Government Interest Merits Pretrial Detention In This Case**

25       In the present case involves a complex RICO enterprise that existed over an extended period,

26   with allegations of VICAR murder, multiple violent assaults, home invasion robberies, extortion, illegal

27   weapons possession, witness intimidation, and other crimes. *See* Dkt. 374 (Superseding Indictment).

28   Defendant is specifically charged with VICAR maiming, assault with a firearm, and witness

intimidation.  The Indictment also alleges that he sexually assaulted Victim 6, and then threatened her and her family if she reported the assault.  Because Defendant agreed and understood that the racketeering acts included murder, he is subject to a term of life imprisonment.

As discussed above, and as the Court has already found, Defendant poses a significant danger to the community, and no conditions or combination of conditions can mitigate that.  The government will establish at trial that Defendant plays a significant role within the Sonoma County Hells Angels RICO enterprise (HASC).  Defendant is a past president of HASC, and he continued to exert significant influence when he stepped down from the position due to a prior incarceration.  Part of the reason for Defendant's stature within the enterprise is the central role he played in a riot between the Hells Angels and their bitter rivals, the Mongols outlaw motorcycle club, that took place in Laughlin, Nevada in 2002.

The Laughlin riot occurred during a motorcycle rally that was attended by large numbers of Hells Angels and Mongols, as wells as many more law-abiding motorcycle enthusiasts.  The two groups came into conflict as they were congregating outside a bar in a casino.  Because of their traditional enmity, tensions ran high, and Defendant sparked the riot when he kicked a Mongol in the chest.  A massive brawl erupted, with Hells Angels and Mongols fighting with guns, knives, hammers, and wrenches.  Minutes later, three people were killed (two Hells Angels and one Mongol) and dozens were injured.  Much of the melee was recorded on video, including Defendant's action setting it in motion.[4]  Despite the deaths of two members, Defendant's role in Laughlin made him famous and respected throughout the Hells Angels.

In this case, Defendant is not charged with VICAR murder, but his alleged crimes are notably violent regardless.  The charges of VICAR maiming and assault with a deadly weapon pertain to an

---

[4] Violence between Hells Angels and Mongols did not stop with Laughlin.  For instance, in *United States v. Ablett*, CR 09-0749 MMC (N.D. Cal. 2009), the defendant was a member of the Mongols motorcycle gang who came to San Francisco hunting for Hells Angels.  Ablett went to a Hells Angels bar and displayed his Mongols clothing.  The President of the San Francisco Hells Angels then came to confront him, and the two fought.  Ablett stabbed the Hells Angel in the chest, and when he collapsed to the street, the defendant took out a gun, walked over the victim, and shot him in the head.  After trial, the jury convicted Ablett of VICAR murder and related crimes.

The government presented additional evidence of extensive violence between the Hells Angels and Mongols in the declaration of its enterprise expert during a *Daubert* challenge to his testimony.  *See* Dkt. 1084-1 (Declaration of Jeremy Scheetz) (detailing 55 acts of violence between Hells Angels and Mongols from 1977 to 2018).

hours-long beating of Victim 5. During that assault, another Hells Angel pistol-whipped Victim 5; he was beaten with a baseball bat; and he was repeatedly punched and kicked. Victim 5's tattoos were forcibly covered over with a tattoo gun, and Defendant took that tattoo gun and crudely etched lines in Victim 5's face. During the beating, HASC members fractured the orbital bone below Victim 5's eye, affecting his vision, among other injuries, and Victim 5 was hospitalized as a result, and those injuries required follow-up surgery over a year later. During the beating, Defendant indicated that he was going to take the firearm that was used to pistol whip Victim 5 and was going to shoot the victim with it. Other Hells Angels stopped him from doing so, however.

While the beating was taking place, Defendant called Victim 6 and told her that he needed to explain to her what was happening to Victim 5. Victim 6 drove to meet Defendant, and when she picked him up, Defendant took her to a secluded location and sexually assaulted her. He forced her to perform oral sex on him; he digitally penetrated her; and he threatened her and her family.

This violent conduct took place just over a month after Defendant was released from a 70-month prison term for a prior felony conviction in this district. *See* CR 11-0624 WHA, Dkt. 322.

These allegations will be supported by witness testimony, phone records, medical records, photographs, home security video, DNA, and other evidence.

Thus, the government has a strong regulatory interest in detention, particularly as this behavior—committing crimes while under court supervision—is consistent with Defendant's previous conduct. "The Court's review of his record indicates a number of instances where Defendant failed to complete a period of court supervision without incident." Dkt. 447 at 2:7-8.

This interest must be weighed against the length of pretrial detention. Defendant notes that he has been detained for slightly under three years because of the current charges in the Superseding Indictment. Prior to the return of the initial indictment, Defendant was sentenced to a term of two years for a violation of the terms of his supervised release in a previous case. Dkt. 1941 at 10:4-8. His term ended on September 17, 2018, just under three years ago. *Id.* at 10:8-9.

As an initial matter, the critical issue for the Court in considering the motion is whether the current length of pretrial detention—roughly 35 months—violates due process. Defendant also suggests that that his projected pretrial detention before going to trial constitutes a due process violation such that

he should be released now. He offers no authority for the proposition that the prospect of future pretrial detention offends due process apart from *United States v. Chen*, 820 F. Supp. 1205 (N.D. Cal. 1992) and *Ailemen*, 165 F.R.D. 571. *See* Dkt. 1284 at 22.

*Chen* does not support this position. While it is true that the court in *Chen* referred to "the tragic prospect of an indeterminate length of pretrial detention" in ordering the defendants released, reading the order makes clear that the court was reopening the detention hearing because of changed circumstances. "In the months since the earlier bail determinations, this case has taken a number of surprising turns, justifying reconsideration of the pretrial release issue for Mike, Kelly and Lucy." *Id.* at 1209. This can also be seen in the court's extensive discussion of the factors under Section 3142(g). *Id.* at 1207-1210. When discussing the due process issue, the court indicated that it was not relying on future detention; it held that the detention up to that point violated due process. "At some point, a defendant's Constitutionally-protected interests in due process and a speedy trial overshadow the other pretrial release issues. It is clear that *this point has now been reached* for the three defendants presently before the court." *Id.* at 1210 (emphasis added). It is also important to note that the only issue with respect to detention in *Chen* was risk of flight, not dangerousness. *Id.* at 1208 ("In the case at bar, there can be no serious contention that release of these defendants poses a danger to the community . . .") (internal citation omitted).

With respect to *Ailemen*, the opinion does refer to the prospect of additional time in custody pending trial, but it also heavily weighed the fact that the defendant had been in custody for more than two years and that he posed only a risk of flight, not a danger to the community. *Id.* 165 F.R.D. at 596 ("The government has presented no evidence, however, that Ailemen has ever committed or attempted to commit acts of physical violence.").

*United States v. Gelfuso*, 838 F.2d 358 (9th Cir. 1988), also supports the point that it is the current extent of pretrial detention that courts must analyze, not the prospect of future detention. In that case, the Ninth Circuit referred to the delay that "has ensued." *Id.* at 359. Other authorities Defendant has previously cited are similarly focused on the extent of time in pretrial detention that has occurred. *See, e.g.*, *United States v. Omar*, 157 F. Supp. 3d 707, 710 (M.D. Tenn. 2016) ("What may have changed is the strength of the Government's evidence, and what most certainly has changed is the length

of the detention that has already been served."); Dkt. 721 at 17 (citing *Omar*, 157 F. Supp. 3d at 710).

*United States v. Accetturo*, 783 F.2d 382 (3rd Cir. 1986), indicates that the key consideration for due process is the amount of time that has already passed in detention. "[W]e decline to hold the Bail Reform Act unconstitutional for omitting the probable duration of pretrial incarceration from its enumeration of factors to be considered by the judicial officer in the initial detention determination." *Id.* at 388. "Appellants['] demand for stronger due process protections for detainees awaiting distant trials is thus better met farther down the procedural road." *Id.* "Moreover, these judgments should reflect such additional factors as the length of the detention that has in fact occurred . . ." *Id.*

Defendant's other authorities discuss the concept of future detention as a factor, but when making determinations regarding due process, each of them relies on the duration of pretrial detention up to the point of the analysis. *See United States v. Hare*, 873 F.2d 796, 801 (3rd Cir. 1989)[5]; *United States v. Gonzales-Claudio*, 806 F.2d 334, 343 (2nd Cir. 1986) (continued detention would violate due process); *United States v. Gatto*, 750 F. Supp. 664 (D.N.J. 1990) (time spent in pretrial detention to that point was "substantial").[6]

## C.     The Government Has Not Created Delay Since the Last Due Process Order

In addition to weighing the government interest in detention, the Court must also consider whether the government is responsible for the delay. *Gelfuso*, 838 F.2d at 359. In this case, in the nine months since Judge Chen last denied an identical motion for release on due process grounds, the government has worked to move the case forward and repeatedly requested that Judge Chen include Defendant in the first trial group. As discussed above, Defendant objected to going to trial in January 2022 with the initial defendants. Dkt. 1875. Defendant cannot claim that the government is responsible for delay when the government urged the Court to hold a trial for him and he objected.

The Court did not agree to the government's request to include Defendant in the first trial group largely because of the conduct that led to an Order to Show Cause. ██████████████

---

[5] In *United States v. Hare*, 873 F.2d 796 (3rd Cir. 1989), the Third Circuit indicated that the future non-speculative length of detention could be a factor for courts to consider, but in conducting its due process analysis, it focused only on the length of detention up to the point of its order. *Id.* at 801.

[6] The court in *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986), did not conduct a due process analysis.

[redacted]

Further, the pandemic has had a continuing and significant impact on court operations since Judge Chen's December 2020 order denying the previous due process motion, and the government cannot be blamed for delays resulting from that unexpected event.

The government is not responsible for delay in Defendant proceeding to trial in the months since the Court denied his earlier due process motion. Therefore, those prior orders still stand. "We consider the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued." *Gelfuso*, 838 F.2d at 359.

### D. The Court Has Denied Release In Similar Circumstances

While courts must conduct due process analyses on a case by case basis, see *Gelfuso*, 838 F.2d at 359, the Court can look to a recent determination in a similar case, *United States v. Reginald Elmore*, CR 13-0764 WHO (N.D. Cal.). In *Elmore*, the defendant moved for a release on the basis that he had been in pretrial detention for over two years. CR 13-0764 WHO, Dkt. 910 at 9:11 (March 3, 2016 Motion for Release) ("Mr. Elmore has been detained since his initial appearance on January 27, 2014."). He projected that the detention would extend to three years by the time of his trial. *Id.* at 9:11-13. Like Defendant Foakes, the defendant in *Elmore* was charged with participation in a violent RICO enterprise. He was also personally charged with specific acts of violence. Unlike Defendant Foakes, however, Elmore was charged with VICAR murder.

This Court found that Elmore's detention did not violate due process, and it denied the motion for release. CR 13-0764 WHO, Dkt. 1000 (April 22, 2016 Minute Order). The Court held that the RICO conspiracy and VICAR murder charges represented the highest government interest. *Id.*, Dkt. 1937 at 25:6-16 (Transcript of April 22, 2016 motion hearing). It found that Elmore had engaged in dangerous prior conduct. *Id.* It found that the government proffered some evidence to support Elmore's participation in the charged conduct. *Id.* The Court further found that a halfway house cannot protect the public against the type of danger posed by the defendant. *Id.* at 26. It found that a three-year period of pretrial detention was not caused by Elmore. *Id.* In conclusion, the Court found that the three-year

period did not violate due process. *Id.* at 27. The Court did not foreclose the possibility that additional time could change its analysis, but it held that "I don't think the time currently anticipated is excessive [under the Constitution], and we'll see what happens." *Id.*

Judge Orrick upheld the Court's ruling. CR 13-0764 WHO, Dkt. 1088 (October 31, 2016 Order Denying Release From Custody). Judge Orrick agreed that Elmore's "past history of serious criminal conduct and failure to follow the conditions of his prior release make him a significant danger to the community." *Id.* at 1-2. He found that the government's interest in detention was very strong, considering the serious nature of the charges and Elmore's history, which included prior weapons offenses and the violation of his supervised release from his most recent conviction. *Id.* at 2. Judge Orrick observed that pretrial detention to that point had been lengthy, and the delay was not due to Elmore's actions. In the end, however, he agreed with the Court.

> This leaves the balancing determination: does the strength of the government's regulatory interest outweigh the clearly prolonged expected length of Elmore's pretrial detention, caused in part by the government's litigation decisions? It does. The government's regulatory interest is very strong and there is no combination of conditions that could insure the public safety in the event of Elmore's pretrial release.

*Id.* at 3.

The projected trial date for defendant Elmore at the time of Judge Orrick's order was August 2017. *Id.* However, Elmore did not proceed to trial at that point.

In September 2018, Elmore renewed his due process challenge to pretrial detention, and the Court denied his motion for release once again. CR 13-0764 WHO, Dkt. 1954 (September 14, 2018 Amended Minute Order). At the time of the second order, defendant Elmore had been in custody for over four and a half years, and his pretrial detention was projected to be five years, based on his scheduled trial date. *See id.*, Dkt. 1969 at 4 (Transcript of September 14, 2018 detention hearing).[7] The Court found that this duration of pretrial detention did not violate due process, based on the facts of the case. The facts were essentially the same, but with the addition of more time spent in pretrial detention and with the fact that some of the evidence against Elmore had been tested in a trial against two co-

---

[7] Defendant Elmore eventually pleaded guilty on May 3, 2019, the day before jury selection was scheduled to begin. CR 13-0764 WHO, Dkt. 2110.

defendants, which resulted in convictions. *Id.* at 5. Judge Orrick upheld the Court's order and denied the motion for release on due process grounds. *Id.*, Dkt. 1960 (October 25, 2018 Minute Order).

Defendant Elmore appealed Judge Orrick's ruling to the Ninth Circuit. CR 13-0764 WHO, Dkt. 1962 (November 1, 2018 Notice of Appeal). The Ninth Circuit affirmed. *Id.*, Dkt. 1973 (December 13, 2018 Ninth Circuit Order). "The district court did not err in holding that the pretrial detention in this case has not been excessively prolonged or violative of due process under the circumstances here." *Id.*

The similarities between the *Elmore* case and Defendant Foakes' situation are striking. Both defendants have been charged with RICO conspiracy and VICAR crimes. Granted, Elmore's crime of VICAR murder is more serious, but Defendant Foakes' participation in a brutal assault and maiming, coupled with a sexual assault, is not substantially less grave. Second, both defendants have violent criminal histories. Elmore participated in the shooting of a rival gang member's funeral[8]; and Defendant Foakes participated in a riot that left multiple people dead and dozens injured and committed two violent assaults within weeks of being released from prison. Third, both defendants committed serious offenses while on supervised release.

The government submits that based on the facts presently before the Court—the strong government interest in detention, balanced against roughly two years in pretrial detention—weigh heavily against any claim that Defendant Foakes' due process rights have been violated by his detention pending trial. That is particularly the case when the government is not responsible for the delay since the Court's last determination that there has been no violation of due procees.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny Defendant Foakes' motion for release.


DATED:  August 11, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney


__/s/ *Kevin J. Barry*_____

---

[8] CR 13-0764 WHO, Dkt. 1937 at 19; Dkt. 1969 at 4.

KEVIN J. BARRY
AJAY KRISHNAMURTHY
LINA Y. PENG
Assistant United States Attorneys