1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7   UNITED STATES OF AMERICA,              Case No. 17-cr-00533-EMC-2

8                      Plaintiff,
                                           **ORDER DENYING DEFENDANT'S**
9          v.                              **MOTION TO STAY TRIAL DURING**
                                           **PENDENCY OF INTERLOCUTORY**
10  RAYMOND MICHAEL FOAKES,                **APPEAL**

11                     Defendant.          Docket No. 3215

12

13

14          This case has been pending for almost six years.  Defendant Raymond Foakes was indicted

15  on October 10, 2017, including on Count One for RICO conspiracy and which included Mr.

16  Foakes' mortgage fraud—the subject of his 2011 guilty plea—among the alleged overt acts.

17  Docket No. 374 ¶ 22(a).  Although the grounds were evident upon the filing of the indictment, it

18  was not until five years later, on December 8, 2022, that Mr. Foakes filed a motion to dismiss

19  Count One, asserting that inclusion in the indictment of the mortgage fraud breached the 2011 plea

20  agreement.  Addressing Mr. Foakes' motion, this Court found that the government breached the

21  2011 plea agreement by including mortgage fraud as an overt act and granted-in-part the motion

22  and precluded the government from asserting it as an overt act.  Docket No. 3128 ("January 25,

23  2023 Order").  Mr. Foakes then filed a motion for reconsideration seeking again the extraordinary

24  relief of dismissal of the entire RICO charge of Count One, despite the fact that the mortgage

25  fraud was only one of nearly two dozen alleged criminal acts by the enterprise; the Court denied

26  the motion.  Docket No. 3196 ("February 21, 2023 Order").

27          On February 28, 2023, Mr. Foakes filed a notice of interlocutory appeal of both orders.

28  Docket No. 3213.  His appeal of the Court's January 25, 2023 Order on the motion to dismiss is

untimely.  *See United States v. Lefler*, 880 F.2d 233, 235 (9th Cir. 1989) ("[F]or a criminal defendant's motion for reconsideration to extend the time within which a notice of appeal must be filed, it must be filed within the period during which a timely notice of appeal from the underlying order could have been filed, *i.e.*, 10 days.").  The Court denied extending time nun pro tunc.  Docket No. 3214 (Minutes).  Only his appeal of the Court's February 21, 2023 Order denying the motion for reconsideration is timely.

Trial is set to begin on March 13, 2023.  The trial date was set months ago.  Ten days prior to that date, on March 3, 2023, Mr. Foakes filed a motion to stay the trial during the pendency of his interlocutory appeal.  Docket No. 3215.  That motion was filed two days after the deadline set by this Court the week before.  Later that day, the government filed an opposition.  Docket No. 3220.  The Court **DENIES** Mr. Foakes' motion for the following reasons.

## I.     <u>MOTION TO STAY</u>

A.     <u>Jurisdiction Over Interlocutory Appeal</u>

As a preliminary matter, there is no appellate jurisdiction on which Mr. Foakes may bring an interlocutory appeal of Count One.  Appellate jurisdiction is limited to final decisions of the district court.  *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United State . . .").  "[A] final judgment is normally deemed not to have occurred until there has been a decision by the District Court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988) (internal quotations omitted).  "In criminal cases, this prohibits appellate review until after conviction and imposition of sentence."  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989).  Mr. Foakes asserts appellate jurisdiction on his interlocutory appeal under the collateral order exception.  *See* Docket No. 3215 at 3; *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (considering, under the collateral order exception, decisions "which finally determine claims of right separate from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate jurisdiction be deferred until the whole case is adjudicated" as final judgments).

United States District Court
Northern District of California

The Ninth Circuit has no jurisdiction to consider Mr. Foakes' interlocutory appeal. The Ninth Circuit has held that "because claims relating to allegedly violated plea bargains are not strictly based upon the Double Jeopardy Clause, we will not consider such arguments in a pre-trial *Abney* appeal." *United States v. Solano*, 605 F.2d 1141, 1143 (9th Cir. 1979) (declining jurisdiction over an interlocutory appeal of a breach of plea agreement claim in a RICO case) (referring to *Abney v. United States*, 431 U.S. 651 (1977)). This Court follows the Ninth Circuit's reasoning here.

Mr. Foakes cites to *United States v. Sandoval-Lopez*, 122 F.3d 797 (9th Cir. 1997) for the proposition that a breach of plea agreement claim is proper for an interlocutory appeal. Docket No. 3215 at 3–4. *Sandoval-Lopez* is inapposite to this case. Although the Ninth Circuit in *Sandoval-Lopez* accepted the interlocutory appeal of the defendants' breach of plea agreement claim and double jeopardy claim (notably, just because the court ruled on non-constitutional grounds doesn't mean that the double jeopardy claim wasn't a basis for interlocutory appellate jurisdiction in the first instance), the instant case does not have a double jeopardy claim to anchor the interlocutory appeal. Unlike *Sandoval-Lopez*, and like *Solano*, this case only involves an appeal of the non-constitutional breach claim. There is no double jeopardy claim. To the extent *Sandoval-Lopez* can be read as authorizing interlocutory appeal of a standalone claim of breach of plea agreement in some circumstances, this case is distinguishable. The court in *Sandoval-Lopez* premised its holding on its reasoning that "the defendants' rights would be significantly undermined if appellate review . . . were postponed until after conviction and sentence." *Sandoval-Lopez*, 122 F.3d at 800 (internal quotation marks omitted). Denying appellate jurisdiction over the interlocutory appeal would have forced the *Sandoval-Lopez* defendants to trial when they otherwise would not have been; permitting jurisdiction remedied that prejudice. Here, there is no such prejudice because Mr. Foakes will face trial on two other charges including a VICAR count based on his other acts of violence in furtherance of the Hells Angels criminal enterprise. Neither party doubts this Court retains jurisdiction to proceed with trial on counts not at issue in the pending appeal, which include multiple counts against Mr. Foakes and two other defendants. As the Ninth Circuit has noted, "the filing of an interlocutory appeal does not divest

United States District Court
Northern District of California

1  the trial court of jurisdiction over aspects of the case that are not the subject of the appeal."

2  *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982)); *see also United States v.*

3  *Powell*, 24 F.3d 28, 30 (9th Cir. 1994) ("We must decide whether an appeal from convictions on

4  severed counts deprives the district court of jurisdiction over the remaining count.  We conclude

5  that it does not.").  And as discussed below, because of the VICAR count against Mr. Foakes, the

6  trial evidence will be the same regardless of whether the RICO count is separately charged against

7  Mr. Foakes.  Substantial evidence of racketeering activity of the Hells Angels of Sonoma County

8  and his extensive involvement in and leadership (as former president) of the Hells Angels chapter

9  will be admitted regardless of the RICO count.  At the hearing, Mr. Foakes contended that, should

10 the trial proceed without Count One, the racketeering enterprise evidence would be narrowed to

11 events occurring around the time of the VICAR assault.  But the government demonstrated that

12 this is not the case.  Because the history of Mr. Foakes' involvement with the Hells Angels is

13 relevant to the VICAR charge that Mr. Foakes acted to maintain his position in the enterprise, the

14 government would be justified in bringing in the broader totality of the evidence showing Mr.

15 Foakes' leadership role in the enterprise.  Moreover, the fact that Mr. Foakes committed the

16 VICAR assault shortly after he was released from prison, wherein Mr. Foakes will contend he was

17 not involved with the HASC during his imprisonment, gives good reason to the government to

18 present broader enterprise evidence.  Thus, Mr. Foakes will not be prejudiced by having to stand

19 trial which might otherwise be obviated by a successful appeal; he will stand virtually the same

20 trial in any event.  Hence, this case presents a situation which is worlds apart from *Sandoval-*

21 *Lopez*.  Furthermore, should trial proceed and Mr. Foakes is convicted of e.g. the RICO and

22 VICAR counts but he ultimately succeeds on appeal in throwing out the RICO count, he will

23 benefit from the usual remedy upon prevailing on appeal—resentencing on only the remaining

24 counts for which his conviction stands.  There is nothing extraordinary about this case that

25 warrants the extraordinary relief of interlocutory appeal at the eleventh hour before trial.

26         There is an additional reason why this Court should not be divested of jurisdiction by Mr.

27 Foakes' attempted interlocutory appeal.  This Court certifies the merits of Mr. Foakes'

28 interlocutory appeal as frivolous.  District courts may retain jurisdiction over an interlocutory

1    appeal by certifying the merits of the appeal to be frivolous. *United States v. La Mere*, 951 F.2d

2    1106, 1108–09 (9th Cir. 1991). As explained in this Court's prior orders (Docket Nos. 3128,

3    3194), the Court has already granted Mr. Foakes' request to exclude the evidence of mortgage

4    fraud; his request for the even broader remedy—dismissal of the entirety of the RICO charge—

5    would afford him far more than the benefit of his plea bargain. It would confer upon him an

6    unwarranted windfall. It is therefore hardly surprising that Mr. Foakes cites no case that requires

7    the dismissal of other unrelated conduct where there has been a breach of a plea agreement.

8           In the alternative, if this Court is wrong about its jurisdiction over the RICO count and

9    proceeds with trial in error, its decision would be a harmless error. The Ninth Circuit has applied

10    a "harmless error" analysis to district courts' errors in following divestiture procedures.

11    *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 791 (9th Cir. 2018). The Ninth Circuit has

12    found proceeding with trial to be a harmless error when the interlocutory appeal "was ultimately a

13    losing one," *United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009), or when "[r]equiring the

14    district court to rehear and rule again on the same matters would achieve nothing other than to

15    significantly disrupt and delay an ongoing criminal trial," *United States v. Claiborne*, 727 F.2d

16    842, 851 (9th Cir. 1984). Here, Mr. Foakes' interlocutory appeal will likely fail and would

17    inevitably and significantly disrupt the scheduled trial. To be sure, this Court is cognizant that the

18    Ninth Circuit has warned that proceeding preemptively with trial before the Ninth Circuit formally

19    rules on jurisdiction may be improper. *See Hickey*, 580 F.3d at 927–28 ("Although the error was

20    harmless in this case, we want to impress upon district courts that acting before the mandate has

21    issued or after the mandate has been recalled risks acting without jurisdiction and wasting judicial

22    resources. . . . When the mandate reissued in Hickey's original interlocutory appeal on May 27,

23    2005, the district court once again had jurisdiction over the case and thus had authority to proceed

24    with Hickey's trial."). But *Hickey* is distinguishable because it involved an appeal of the sole

25    basis for trial. Here, Mr. Foakes has appealed one of multiple counts against him and other

26    defendants over which this Court unquestionably retains jurisdiction. And as noted, the trial

27    evidence will be substantially the same with or without Count One.

28

B.      Stay

The Court declines to stay the entire trial against Mr. Foakes pending the resolution of the interlocutory appeal. "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The Court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. All four factors weigh against staying the case.

First, Mr. Foakes has not made a strong showing that he is likely to succeed on the merits of his appeal. This Court has already rejected each of his arguments in denying his motion for rehearing. Docket No. 3196. Moreover, as discussed above, his interlocutory appeal on Count One is frivolous.

Second, Mr. Foakes has not shown that he will be irreparably injured absent a stay. If this Court were to proceed to trial and the Ninth Circuit subsequently reversed on Count One, that conviction can simply be thrown out and Mr. Foakes resentenced as noted above. Mr. Foakes would not be prejudiced by including Count One in the trial. The evidence will be the same since he is charged with VICAR violation along with witness intimidation. And if he succeeds on appeal of his challenge to Count One, the fact that he was tried on that count along with the other counts will not work a cognizable prejudice. For instance, in *People v. Marks*, the California Court of Appeals rejected a defendant's argument that a reversible error on one conviction (kidnapping) required the reversal of his other convictions (burglary, robbery, etc.) stemming from the same criminal incident. 184 Cal. App. 3d 458, 463 (Ct. App. 1986). The court agreed with the California Supreme Court that—consistent with the dearth of case law to the contrary—it "did not perceive the other convictions to be tainted by the [reversible error] pursuant to the [reversed]

charge." *Id.*  The court emphasized that it had been "offered no proof that [the erroneous proceeding] would be more prone to find the defendant guilty on other charges than [without the error]." *Id.* at 464.  The court thus did not reverse the defendants' other convictions when it reversed the kidnapping conviction.  *Id.*  It is, of course, common for the federal courts of appeals to reverse on less than all convictions and remand for resentencing—not find that the entire trial was tainted.  *See e.g.*, *United States v. Dominguez*, 48 F.4th 1040 (9th Cir. 2022) (reversing a conviction on two counts (money-laundering, possession of a firearm in furtherance of a crime) and affirming the other counts (conspiracy to commit robbery, robbery, etc.) and remanding for resentencing).  Moreover, as noted above, Mr. Foakes will regardless be tried of the even more serious VICAR count.

Third, issuance of the stay will substantially injure other interested parties.  The government has substantial reliance interests in adhering to the trial date that has been set.  This case has been pending for 2017—now almost six years old.  The Government has arranged for the testimony of dozens of witnesses, many of which are victims and cooperators who are already reluctant to testify.  A further delay of this trial places witnesses in the unenviable position of having to linger in limbo and prolonging whatever fears they may have about testifying.  Furthermore, witness memories may well fade during the pendency of the appeal.  *Barker v. Wingo*, 407 U.S. 514, 521 (1972) ("As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade.  If the witnesses support the prosecution, its case will be weakened, sometimes seriously so.").  Further, co-defendant Mr. Ranieri has announced his opposition to a stay of his trial.  Docket No. 3219.

Although the Government has suggested the possibility of staying the RICO count and proceeding to trial on all other counts against all three defendants, this risks having to have two trials should the RICO count be sustained in appeal.  Not only would this pose a tremendous cost to lawyer and judicial resources, as each RICO case is expected to take 2 to 3 months to try, this would require reluctant witnesses—victims and cooperators—to testify two more times (as they already had to testify at the first trial of three other co-defendants who were convicted).  Moreover, this could potentially give the Government two bites of the apple:  should Mr. Foakes

be acquitted of the VICAR count, he may well have to stand trial again on the RICO claim even if the VICAR acquittal were based on failure of proof on the racketeering enterprise element.  Given the overlap in proof for the RICO and VICAR counts, the government should try its case in one proceeding, win or lose.

Fourth, a stay would not be within the public interest.  "[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused. . . . Among other things, delay may prejudice the prosecution's ability to prove its case, increase the cost to society of maintaining those defendants subject to pretrial detention, and prolong the period during which defendants released on bail may commit other crimes."  *United States v. MacDonald*, 435 U.S. 850, 862 (1978).  "[W]hen a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice."  *Flanagan v. United States*, 465 U.S. 259, 265 (1984).

Moreover, it should be noted that Mr. Foakes has been in custody for over five years.  He has been detained on a finding of dangerousness.  But as this Court has recognized, five years of pretrial detention puts him at the edge of due process.  As Magistrate Judge Spero stated last year in rejecting Mr. Foakes' bid for pretrial release, any further delay in trial will require he be released as a matter of due process notwithstanding the finding that he poses a danger to the community.  *See id.* at 264 ("Delay between arrest and punishment prolongs public anxiety over community safety if a person accused of a serious crime is free on bail.").

Thus, the Court **DENIES** Mr. Foakes' Motion to Stay Trial During Pendency of Interlocutory Appeal.  The Court intends to proceed with trial on all counts as scheduled.  Mr. Foakes is free to seek an emergency stay from the Ninth Circuit and is invited to do so immediately should he decide to so move given the imminence of jury selection of trial.

This order disposes of Docket No. 3215.

**IT IS SO ORDERED**.

Dated: March 6, 2023

_____
EDWARD M. CHEN
United States District Judge

8